OPINION OF THE COURT
Fahey, J.
This action arises from a motor vehicle accident that occurred after nonparty Lorraine A. Walsh was treated at defendant South Nassau Communities Hospital by defendants Regina E. Hammock, DO and Christine DeLuca, RPA-C, that is, medical professionals employed by defendant Island Medical Physicians, P.C. (collectively, Island Medical defendants). As a part of that treatment, defendants intravenously administered to Walsh an opioid narcotic pain-killer and a benzodiazepine drug without warning her that such medication either impaired or could impair her ability to safely operate an automobile. Shortly thereafter, Walsh drove herself from the Hospital and, while allegedly impaired by the medication administered to her at that facility, she was involved in an accident. The automobile she operated crossed a double yellow line and struck a bus driven by Edwin Davis (plaintiff).
Here we are confronted with the question whether third-party liability can attach when a hospital administered drugs to a patient and then released her, in an impaired state, without any warning that the drugs affected or could have affected her ability to safely operate a motor vehicle. Stated differently, the main question is whether defendants owed a duty to plaintiff and his wife, Dianna,[1] to warn Walsh that the medication defendants gave to Walsh either impaired or could have impaired her ability to safely operate a motor vehicle following her departure from the Hospital.
We are mindful that in addressing the modification of a legal duty, its reach must be limited by what is foreseeable. *570 Any expansion of duty is a power to be exercised cautiously, but it is a power that must be used if the changing needs of society are to be met. It was succinctly stated by Judge Cardozo that “[t]he principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be” (MacPherson v Buick Motor Co., 217 NY 382, 391 [1916]). For the reasons that follow, we conclude that where a medical provider has administered to a patient medication that impairs or could impair the patient’s ability to safely operate an automobile, the medical provider has a duty to third parties to warn the patient of that danger.
L
On March 4, 2009, Walsh sought treatment at the Hospital’s emergency room. According to plaintiffs, Walsh’s medical records indicate that she drove herself to the Hospital, where she was intravenously administered Dilaudid, an opioid narcotic pain-killer, and Ativan, a benzodiazepine drug, at 11:00 a.m.
The record reflects that “[c]ommon side effects [of Ativan] include sedation, dizziness, weakness, unsteadiness, and disorientation.” Plaintiffs’ expert averred that such drug has a “sedative/hypnotic” effect. Plaintiffs’ expert also explained that “Dilaudid has two to eight times the painkilling effect of morphine,” that the half-life of intravenously-administered Dilaudid is two to four hours, and that the Dilaudid package label and package insert contain various cautionary instructions pertinent to this matter. For example, plaintiffs’ expert noted that “the package label for Dilaudid states that it ‘may impair mental and/or physical ability needed to perform potentially hazardous activities such as driving a car or operating machinery.’ ” The same expert further noted that the section of the package insert for Dilaudid “titled Use In Ambulatory Patients . . . states that the drug ‘may impair mental and/or physical ability required for the performance of potentially hazardous tasks (e.g., driving, operating machinery). Patients should be cautioned accordingly.’ ” In the words of that expert, the “insert also states that the most common adverse effects of [Dilaudid] are ‘more prominent in[, inter alia,] ambulatory patients.’ ”
Walsh was discharged from the Hospital at 12:30 p.m. on the date in question. She drove herself away from that facility. Nineteen minutes after that discharge, Walsh was involved in *571 a motor vehicle accident in which the vehicle she was driving crossed a double yellow line and struck a bus operated by plaintiff. According to plaintiffs, the accident occurred while Walsh was in “a state of disorientation” and “under the influence of the aforementioned drugs.”
Plaintiffs subsequently commenced this action against the Island Medical defendants and the Hospital. The complaint alleges, in relevant part, that Walsh sought the professional care of defendants on the date in question; that defendants rendered medical care to Walsh at that time; that, in the course of rendering such care to Walsh, defendants administered to Walsh the medication at issue; that defendants did not warn Walsh of the effects of such medication; and that the accident occurred while Walsh was affected by such medication. Based on those allegations, plaintiffs seek damages for injuries they sustained as the result of defendants’ alleged medical malpractice in treating Walsh.
After issue was joined, the Island Medical defendants moved to dismiss the complaint for failure to state a cause of action (see CPLR 3211 [a] [7]), essentially contending that they did not owe plaintiffs a duty of care inasmuch as plaintiffs were third parties to the treatment rendered to Walsh. The Hospital cross-moved for the same relief, while plaintiffs cross-moved for an order both granting leave to serve an amended complaint asserting a cause of action for negligence and consolidating this action with two other actions arising from the subject accident. Supreme Court granted the motion of the Island Medical defendants and the cross motion of the Hospital seeking dismissal of the complaint while concomitantly denying plaintiffs’ cross motion (2012 NY Slip Op 31969[U] [Sup Ct, Nassau County 2012]). On appeal, the Appellate Division affirmed, reasoning that because “only Walsh . . . had a physician-patient relationship with the defendants],] . . . the allegations did not support a duty of care owed by the defendants to the injured plaintiff” (119 AD3d 512, 514 [2d Dept 2014]). We granted plaintiffs leave to appeal (24 NY3d 905 [2014]).
IL
Under these facts, defendants owed to plaintiffs a duty to warn Walsh that the medication administered to her either impaired or could have impaired her ability to safely operate an automobile. We begin our discussion of that issue with reference to the principles of law that inform our review.
*572 In the context of a motion to dismiss pursuant to CPLR 3211, we “determine only whether the facts as alleged fit within any cognizable legal theory” (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). “[T]he criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one” (id. at 88 [internal quotation marks omitted]). We “may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint” (id.).
Similarly germane is our jurisprudence with respect to the recognition of a duty of care. “The threshold question in any negligence action is . . . [whether the] defendant owe[s] a legally recognized duty of care to [the] plaintiff” (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001]). “The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is [one] of law for the courts” (Purdy v Public Adm’r of County of Westchester, 72 NY2d 1, 8 [1988], rearg denied 72 NY2d 953 [1988]). “Courts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty” (Tenuto v Lederle Labs., Div. of Am. Cyanamid Co., 90 NY2d 606, 612 [1997]; see Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 586 [1994]). A critical consideration in determining whether a duty exists is whether “the defendant’s relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm” (Hamilton, 96 NY2d at 233).
Said another way, our calculus is such that we assign the responsibility of care to the person or entity that can most effectively fulfill that obligation at the lowest cost. It is against that backdrop that we conclude that, under the facts alleged, defendants owed plaintiffs a duty to warn Walsh that the medication defendants administered to Walsh impaired her ability to safely operate a motor vehicle.
A.
In evaluating duty questions we have historically proceeded carefully and with reluctance to expand an existing duty of care. In a series of cases including Eiseman v State of New York (70 NY2d 175 [1987]), Purdy (72 NY2d 1), Tenuto (90 NY2d 606), and McNulty v City of New York (100 NY2d 227 [2003]), we declined to impose a broad duty of care extending from physicians past their patients “to members of the . . . community individually” (Eiseman, 70 NY2d at 188). That is, *573 we declined to recognize a duty to an indeterminate, faceless, and ultimately prohibitively large class of plaintiffs, as opposed to “a known and identifiable group” (Palka, 83 NY2d at 589; see McNulty, 100 NY2d at 232; Eiseman, 70 NY2d at 187).
Specifically, in Eiseman we considered circumstances in which “an ex-felon with a history of drug abuse and criminal conduct” was released from incarceration and “accepted into a special State college program for the disadvantaged” {id. at 180). Following his acceptance into that program, the ex-felon raped and murdered a fellow student {see id.). The administrator of the decedent’s estate sought recovery from the State on the ground that a prison physician negligently ignored the ex-felon’s emotional instability and history of mental disorder in completing an examination report. The report was submitted in conjunction with that convict’s admission into the college program {see id. at 182-183). Although we concluded that “the physician plainly owed a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient,” we maintained that “[t]he physician did not . . . undertake a duty to the community at large,” and more specifically that the physician did not owe a duty of care to “members of the . . . community individually” {id. at 188). Consequently, we determined that the State, as the employer of the physician, had no duty to inform the victim of the convict’s medical history {see id. at 188-189).
About a year after deciding Eiseman, we determined Purdy (72 NY2d 1). In that case the plaintiff was struck and injured by a speeding car while he patronized a gas station. The offending vehicle was operated by a resident of the defendant nursing home, who had “a medical condition that left her susceptible to fainting spells and blackouts” {id. at 6). We considered the question whether the nursing home and the defendant physician, who was merely the admitting physician at the nursing home, “owed to [the] plaintiff — an unidentified member of the public — a duty either to prevent [the resident] from driving or to warn her of the dangers of driving given her medical condition” {id.). In doing so, we acknowledged that “there exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons that [have given rise to] a duty to do so” {id. at 8). More particularly, we indicated that those circumstances exist where there is a special relationship, which we described as, inter *574 alia, “a relationship between [the] defendant and a third person whose actions expose [the] plaintiff to harm such as would require the defendant to attempt to control the third person’s conduct” (id.).
Nevertheless, on those facts we determined that there was no “special relationship between [the] defendants and [the resident] such as would require [the defendants] to control [the resident’s] conduct for the benefit of [the] plaintiff” (id.). We specifically “conclude [d] . . . that neither [the nursing home] nor [the physician] had the necessary authority or ability to exercise such control over [the resident’s] conduct so as to give rise to a duty on their part to protect [the] plaintiff — a member of the general public” (id. at 8-9).
After Purdy we heard Tenuto (90 NY2d 606), wherein we concluded that, under the circumstances of that case, a physician had a duty of reasonable care to the parents of a five month old to whom he administered an oral polio vaccine. The physician allegedly did not advise the parents of their risk of exposure to the polio virus following the administration of that vaccine, and the plaintiff father was subsequently afflicted with that disease. Relying on both foreign authorities and Eiseman (70 NY2d at 188), we indicated that members of a patient’s immediate family or household who may suffer harm as a result of the medical care a physician renders to that patient benefit from a duty of care running to them from the physician (see Tenuto, 90 NY2d at 610-614). In so concluding, we noted that there the
“existence of a special relationship sufficient to supply the predicate for extending the duty to warn and advise [the] plaintiffs of their peril . . . [was] especially pointed [inasmuch as] the physician [was] a pediatrician engaged by the parents to provide medical services to their infant, and whose services, by necessity, require[d] advising the patient’s parents” (id. at 614).
Tenuto was arguably constrained by our decision in McNulty (100 NY2d 227).[2] There we were called upon to decide whether the defendant physicians owed a duty of care to the plaintiff, *575 who was a friend of a woman they had treated for infectious meningitis and who subsequently contracted that disease herself. In that case the physicians allegedly answered in the negative the plaintiff’s question whether she needed treatment after being in close contact with her infected friend (id. at 229). Significantly, we stated there was “no allegation that [the] plaintiff’s injury arose from the [physicians’] treatment of [the patient].” We concluded that an extension of the duty physicians owe their patients so as to cover the plaintiff would have been unprecedented (McNulty, 100 NY2d at 234).[3]
B.
We left open the possibility of the recognition of a duty in a case such as this through McNulty and Purdy. In McNulty, we observed that, “ [i] n the limited circumstances where we have expanded the duty [of care of a treating physician so as to include a third party], the third party’s injury resulted from *576 the physician’s performance of the duty of care owed to the patient” (McNulty, 100 NY2d at 233). More importantly, in Purdy, in addition to determining that neither the defendant nursing home nor the defendant physician owed a duty to the public to warn the resident of the adverse effects of the medication that had been prescribed to her, we acknowledged the plaintiff’s citations to foreign authorities imposing a duty on a treating physician in favor of unidentified members of the public to warn a patient of the adverse effects of prescribed medication on the safe operation of an automobile (see Purdy, 72 NY2d at 9-10). In concluding there that the defendant physician bore no duty to the general public to warn the resident of the dangers of driving given her medical condition, we noted that such doctor
“was not [the resident’s] treating physician, and therefore was under no legal obligation to warn [the resident] of possible dangers involved in activities in which she chose to engage off the premises of the facility. Nor[, we added,] ha[d] [the] plaintiff demonstrated that [the resident’s] impaired driving ability was attributable to any medication prescribed to her by [the physician] without appropriate warnings” {id. at 10).
Our failure in Purdy to foreclose the prospect that a treating physician who does not warn a patient of the dangers of operating a motor vehicle in the face of a certain medical condition could be held accountable for that omission by a member of the general public logically left open the possibility that we could one day recognize such a duty.
This is an instance in which defendants’ “relationship with . . . the tortfeasor . . . place [d] [them] in the best position to protect against the risk of harm” (Hamilton, 96 NY2d at 233), and the balancing of factors such as the expectations of the parties and society in general, the proliferation of claims, and public policies affecting the duty proposed herein {see id. at 232) tilts in favor of establishing a duty running from defendants to plaintiffs under the facts alleged in this case.
In formulating duty,
“[v]arious factors . . . have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, [and] *577 the moral blame attached to the wrongdoer .... Changing social conditions lead constantly to the recognition of new duties [, and] [n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists” (Prosser & Keeton, Torts § 53 at 359 [5th ed 1984] [footnotes omitted]).
Here, put simply, to take the affirmative step of administering the medication at issue without warning Walsh about the disorienting effect of those drugs was to create a peril affecting every motorist in Walsh’s vicinity. Defendants are the only ones who could have provided a proper warning of the effects of that medication. Consequently, on the facts alleged, we conclude that defendants had a duty to plaintiffs to warn Walsh that the drugs administered to her impaired her ability to safely operate an automobile.[4]
*579 c.
Our conclusion with respect to the duty owed in this case is accompanied by three observations. First, the “cost” of the duty imposed upon physicians and hospitals should be a small one: where a medical provider administers to a patient medication that impairs or could impair the patient’s ability to safely operate an automobile, the medical provider need do no more than simply warn that patient of those dangers. It is already the function of a physician to advise the patient of the risks and possible side effects of prescribed medication (see Wolfgruber v Upjohn Co., 52 NY2d 768, 770 [1980], affg 72 AD2d 59, 61 [4th Dept 1979] [“Since nonmedical consumers are legally precluded from ‘self-prescribing’ prescription drugs, the physician’s function is to evaluate a patient’s needs, assess the risks and benefits of available drugs and then prescribe a drug, advising the patient of its risks and possible side effects”]; see also Martin v Hacker, 83 NY2d 1, 9 [1993] [discussing the duty of a prescription drug manufacturer to caution against a drug’s side effects by giving adequate warning to the prescribing physician, who “acts as an ‘informed intermediary’ . . . between the manufacturer and the patient”]). Our decision herein imposes no additional obligation on a physician who administers prescribed medication.[5] Rather, we merely extend the scope of persons to whom the physician may be responsible for failing to fulfill that responsibility.
Second, much as we are empowered to identify the duty articulated herein, it is within our authority to clarify how that *580 obligation may be met. In that vein we reiterate that defendants and those similarly situated may comply with the duty recognized herein merely by advising one to whom such medication is administered of the dangers of that medication. Indeed, this case is not about preventing Walsh from leaving the Hospital, but about ensuring that when Walsh left the Hospital, she was properly warned about the effects of the medication administered to her.
Third, our decision herein should not be construed as an erosion of the prevailing principle that courts should proceed cautiously and carefully in recognizing a duty of care. We have previously noted that, “[w]hile the temptation is always great to provide a form of relief to one who has suffered, . . . the law cannot provide a remedy for every injury incurred” (Albala v City of New York, 54 NY2d 269, 274 [1981]). In other words, we have said that “[n]ot all mistakes . . . result in liability” (McNulty, 100 NY2d at 232). This decision does not reflect a retreat from those principles.
III.
We now turn to the remaining issue on appeal, which pertains to the part of plaintiffs’ cross motion seeking leave to serve an amended complaint. That request was based on plaintiffs’ desire to add a cause of action for negligence against defendants based on plaintiffs’ theory that defendants negligently caused Walsh to become “medically intoxicated and cognitively impaired,” and that Walsh caused the accident because of that impairment.
As a general rule, “leave to amend a pleading should be freely granted in the absence of prejudice to the nonmoving party where the amendment is not patently lacking in merit . . . , and the decision whether to grant leave to amend a complaint is committed to the sound discretion of the court” (Pink v Ricci, 100 AD3d 1446, 1448 [4th Dept 2012] [internal quotation marks omitted]; see CPLR 3025 [b]; Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983]). “A complaint sounds in medical malpractice rather than ordinary negligence where the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician to a particular patient” (IB NY PJI3d 2:150 at 47 [2015]; see Weiner v Lenox Hill Hosp., 88 NY2d 784, 788 [1996] [“(A) claim sounds in medical malpractice when the challenged conduct constitutes medical treatment or *581 bears a substantial relationship to the rendition of medical treatment by a licensed physician. By contrast, when the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the hospital’s failure in fulfilling a different duty, the claim sounds in negligence” (internal quotation marks and citation omitted)]). Inasmuch as the “medical intoxication” of which plaintiffs complain in the proposed new cause of action bears a substantial relationship to the medical treatment administered by defendants, we conclude that plaintiffs’ claims against defendants sound in medical malpractice, rather than in negligence. Consequently, the part of the cross motion seeking leave to serve an amended complaint asserting a cause of action sounding in negligence was properly denied inasmuch as that proposed cause of action lacks merit.[6]
Accordingly, the order of the Appellate Division should be modified, without costs, by denying the motions of the Island Medical defendants and the Hospital to dismiss the complaint and, as so modified, affirmed.

. Dianna Davis was not involved in the accident, but she has asserted a derivative cause of action for loss of consortium.

. After deciding Tenuto but before hearing McNulty we determined Cohen v Cabrini Med. Ctr. (94 NY2d 639 [2000]), wherein we refused to recognize a duty of care running from the physician of the plaintiffs husband to the plaintiff to prevent the personal injuries complained of there, namely, *575 the unwitting diminishment of the ability of the plaintiff’s husband to impregnate the plaintiff. We reasoned that a contrary holding “would be an unwarranted extension of our narrowly drawn jurisprudence with respect to malpractice liability to a patient’s family member” {id. at 643).

. Here we have specifically discussed the existence and scope of duty in the context of the administration of medical services. We note, however, that our caution in setting the parameters of duty in that context is also evident in other circumstances.
For example, in D’Amico v Christie (71 NY2d 76 [1987]) we reiterated the rule that landowners “have a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control” {id. at 85). Through that opinion we decided two appeals — D’Amico and Henry v Vann — and the second of those appeals arose from circumstances in which an employer detected an intoxicated employee, fired the employee, and told the employee to leave the employer’s premises, whereupon the dismissed employee drove approximately one-half mile away before colliding with an oncoming vehicle {Henry, 71 NY2d at 82). On those facts we concluded that the employer had no legal duty to control the terminated employee’s conduct {id. at 89).
Similarly, in Martino v Stolzman (18 NY3d 905 [2012]), we applied the foregoing principles of D’Amico to social hosts, ruling that such hosts owe no duty to protect third persons from a guest who becomes intoxicated on and then drives from a premises controlled by the hosts {id. at 908). Careful, too, was our approach in Stiver v Good & Fair Carting & Moving, Inc. (9 NY3d 253 [2007]), in which we concluded that the inspector of a motor vehicle involved in an accident attributable to the mechanical failure of that vehicle has no duty to third parties to properly inspect that automobile (see id. at 255-257). We were likewise circumspect in Hamilton (96 NY2d 222), wherein we concluded that the defendant handgun manufacturers did not owe “a duty [to the plaintiffs, who were relatives of people killed by handguns,] to exercise reasonable care in the marketing and distribution of the handguns they manufacture” {id. at 230-231).

. There is support for our conclusion in other jurisdictions. In Taylor v Smith (892 So 2d 887 [Ala 2004]), the Supreme Court of Alabama collected cases from seven jurisdictions imposing a duty on physicians for the benefit of nonpatient members of the driving public in support of its conclusion that “the duty of care owed by the director of a methadone-treatment center to his patient extends to third-party motorists who are injured in a foreseeable automobile accident with the patient that results from the director’s administration of methadone” (id. at 897; see id. at 893-894, citing McKenzie v Hawai’i Permanente Med. Group, Inc., 98 Haw 296, 309, 47 P3d 1209, 1222 [2002] [ruling that a physician “owes a duty to non-patient third parties” to warn patients of possible adverse effects of prescribed medication on their ability to safely operate a motor vehicle, “where the circumstances are such that the reasonable patient could not have been expected to be aware of the risk without the physician’s warning”], Joy v Eastern Maine Med. Ctr., 529 A2d 1364, 1365-1366 [Me 1987] [concluding that a physician who treated a patient by placing a patch over one of the patient’s eyes owed a duty to motorists to warn the patient against driving while wearing the patch], Welke v Kuzilla, 144 Mich App 245, 252, 375 NW2d 403, 406 [1985] [determining that a physician who injected a patient with an “unknown substance” owed a duty to a third-party motorist “within the scope of foreseeable risk, by virtue of (the physician’s) special relationship with (the patient)”], Wilschinsky v Medina, 108 NM 511, 514-515, 775 P2d 713, 716-717 [1989] [concluding that physicians who inject a patient “with drugs known to affect judgment and driving ability” have “a duty to the driving public”], Zavalas v State Dept. of Corr., 124 Or App 166, 171, 861 P2d 1026, 1028 [1993] [rejecting the contention “that a physician has no duty to third parties . . . who claim that the physician’s negligent treatment of a patient was the foreseeable cause of their harm”], review denied 319 Or 150, 877 P2d 86 [1994], Gooden v Ups, 651 SW2d 364, 369 [Tex App 1983] [“under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where the *578 physician’s negligence in diagnosis or treatment of his patient contributes to plaintiff’s injuries”], and Schuster v Altenberg, 144 Wis 2d 223, 239-240, 424 NW2d 159, 166 [1988] [rejecting the contention “that a psychotherapist (has no) duty to warn third parties”]). The Taylor court also relied on a case from an eighth jurisdiction, which distinguished “ ‘a mere failure to warn’ ” from an affirmative act of failing to take proper precautions where the physician has “ ‘administer [ed] a drug which, when combined with other drugs or alcohol, may severely impair the patient’ ” (id. at 894-895, quoting Cheeks v Dorsey, 846 So 2d 1169, 1173 [Fla Dist Ct App, 4th Dist 2003], review denied 859 So 2d 513 [Fla 2003] [emphases removed]). Similarly, here, we have recognized a duty of care running from a physician to third parties where the physician fails to warn his or her patient of potential physical impairments caused by a drug the physician has administered, rather than merely prescribed, to the patient.
Moreover, our own canvas has revealed that at least eight other jurisdictions appear to have recognized a duty running from a physician past his or her patient to the general public to warn the patient of the possible adverse effects of medication administered or treatment rendered to the patient by the physician (see Medina v Hochberg, 465 Mass 102, 107-108, 987 NE2d 1206, 1211 [2013] [acknowledging that the Supreme Judicial Court of Massachusetts had previously “concluded that a physician may be liable to a third party for failing to warn his or her patient of the known side effects of medication prescribed by the physician that might affect the patient’s ability to drive a motor vehicle”]; Hardee v Bio-Medical Applications of South Carolina, Inc., 370 SC 511, 516, 636 SE2d 629, 631-632 [2006] [“a medical provider who provides treatment which it knows may have detrimental effects on a patient’s capacities and abilities owes a duty to prevent harm to patients and to reasonably foreseeable third parties by warning the patient of the attendant risks and effects before administering the treatment”]; Burroughs v Magee, 118 SW3d 323, 333 [Tenn 2003] [holding, under the facts of that case, that the defendant physician “owed a duty of care (to third-party motorists) to warn (a patient of the physician) of the possible adverse effect of. . . two prescribed drugs on (the patient’s) ability to safely operate a motor vehicle”]; Hoehn v United States, 217 F Supp 2d 39, 41, 48-49 [D DC 2002] [deeming viable a claim that “a hospital or physician owe(s) a duty to the general public ... to (warn) a heavily medicated patient . . . about the danger of driving”]; Osborne v United States, 211 W Va 667, 669, 567 SE2d 677, 679 [2002] [recognizing that West Virginia law permits a third party to bring a cause of action against a health care provider for foreseeable injuries that were proximately caused by the health care provider’s negligent treatment of a tortfeasor patient]; Cram v Howell, 680 NE2d 1096, 1097-1098 [Ind 1997] [concluding the defendant physician had “a duty of care to take reasonable precautions in monitoring, releasing, and warning his patient for the protection of unknown third persons potentially jeopardized by the patient’s driving upon leaving the physician’s office” where the physician allegedly administered to the patient certain immunizations or vaccinations that caused the patient to experience “episodes of loss of consciousness”]; Myers v Quesenberry, 144 Cal App 3d 888, 890, 894, 193 Cal Rptr 733, 733, 736 [4th Dist 1983] [observing, in the context of concluding that “liability may be imposed against two physicians for negligently failing to warn their patient of the foreseeable and dangerous consequences of engaging in certain conduct *579 which proximately caused injuries to (the) plaintiff, a third person,” that “(w)hen a physician furnishes medicine causing drowsiness, he should warn his patient not to drive or engage in other activities which are likely to cause injury”]; Kaiser v Suburban Transp. Sys., 65 Wash 2d 461, 464, 398 P2d 14, 16 [1965] [concluding that the question whether the defendant doctor was negligent in failing to warn the patient bus driver that a prescribed drug could cause drowsiness was for a trier of fact], mod on other grounds 65 Wash 2d 461, 401 P2d 350 [1965]). We note, however, that our decision herein is not grounded in those foreign authorities inasmuch as our result is the product not of “vote counting” but of our independent balancing of factors including the expectations of the parties and of society, the proliferation of claims, and public policies affecting the duty we now recognize (see Hamilton, 96 NY2d at 232).

. With respect to the minimal “cost” arising from the duty imposed herein, we note that warnings that prescribed medication impairs or could impair the patient’s ability to safely operate an automobile are commonly administered when filling a prescription at a pharmacy, and there is no reason why a medical provider cannot take a similar, simple prophylactic measure.

. We make a brief procedural point here. Plaintiffs appeal to this Court from an Appellate Division order that affirmed a Supreme Court judgment dismissing the complaint. This Court may review the propriety of the denial of plaintiffs’ cross motion seeking leave to serve an amended complaint (see Oakes v Patel, 20 NY3d 633, 644-645 [2013]). However, we do not address the motion for consolidation, which was denied as academic below. This Court is reinstating the complaint, so the request for consolidation is no longer academic and may be raised again at Supreme Court.