OPINION OF THE COURT
Emilio Colaiacovo, J.
This action was commenced by plaintiff seeking to recover for injuries she sustained in a motor vehicle accident that occurred on December 8, 2012. The plaintiff’s vehicle was struck by a car driven by Collin Ward Crane, who died as a result of injuries he sustained in the accident (hereinafter referred to as decedent). Plaintiff alleges that the decedent’s girlfriend, Taylor Cratsley (a named defendant), was texting the decedent while he was driving, thus distracting him and causing the accident.
Plaintiff moved for partial summary judgment on the issues of liability and serious injury. These motions were granted against the decedent, his estate and his father and reduced to a separate order, which was granted on December 7, 2016. Cratsley moved for summary judgment seeking to dismiss the plaintiff’s action against her in its entirety. The court reserved on Cratsley’s motion for summary judgment, which now follows.
Statement of Facts
On December 8, 2012, a motor vehicle accident occurred on New York State Route 33 when the vehicle driven by the decedent struck head on a vehicle driven by the plaintiff. The New York State Police investigation concluded that decedent’s vehicle crossed the center line before colliding with plaintiff’s vehicle. Though the accident was unwitnessed, New York State Police investigators concluded that the decedent most likely was distracted, as there were no signs that decedent attempted to avoid or take evasive measures to elude contact with the plaintiff’s vehicle.
Upon inspection of the decedent’s vehicle, investigators located a cell phone on the floor of the driver’s side, in front of the decedent and between his legs. The cellular phone, which was significantly damaged, was examined by the New York State Police. Upon inspection, it appeared that the decedent *813 and Ms. Cratsley were texting before the accident occurred. After recovering the digital information from the decedent’s cellular phone, New York State Police investigators interviewed Ms. Cratsley. She indicated to the investigators, and subsequently confirmed in her deposition and later an affidavit, that although she was texting the decedent on the date of the accident, she was unaware that the decedent was driving at the time they were exchanging text messages. (See aff of Taylor Cratsley, dated Nov. 21, 2016.) Ms. Cratsley added that often, when the decedent was returning from work, a family member would pick him up and drive him home. She also stated that on the date of the accident, although she was aware he was working, she was unaware if he was driving himself or getting a ride to work. Cratsley testified at her deposition that she never expected nor asked the decedent to send her text messages or read text messages while driving. None of the text messages produced contradict Ms. Cratsley’s testimony.
Cratsley moved for summary judgment, arguing that since New York State does not recognize a duty to control the actions of a third party, there existed no special relationship between Cratsley and the plaintiff that would give rise to any special duty. Plaintiff opposed the motion, citing New Jersey precedent that establishes a special relationship and resulting duty under similar circumstances.
Discussion of Law
The plaintiff acknowledges that there is no New York State precedent to establish a duty that would obligate Cratsley to protect a third party, namely the plaintiff, from harm. Plaintiff submits that the matter before the court is a case of first impression in the State of New York. However, the plaintiff maintains that the duty that should be imposed is consistent with the public policy of the State of New York, which has established similar duties to third parties in other cases.
If plaintiff’s argument is entertained, the court would be forced to engage in a profound reexamination of negligence law that was addressed in Palsgraf v Long Is. R.R. Co. (248 NY 339 [1928]). Palsgraf, an oft cited authority, held that in order to recover for the negligent act of others, a plaintiff must establish duty, standard of care, breach of duty, and proximate cause. Since Palsgraf, New York courts have carefully examined those components to establish negligence and have elaborated on them to justify a recovery for damages.
*814 Plaintiff cites to a New Jersey case that establishes liability in circumstances where a person contributes to a driver’s distraction that results in an accident that causes injury. In Kubert v Best, the New Jersey Superior Court, Appellate Division, held that a third party, who had knowledge that the motorist she was texting was driving at a time the parties were exchanging text messages, could be found liable for any resulting damages. (432 NJ Super 495, 75 A3d 1214 [2013].) In Kubert, the plaintiffs were riding on a motorcycle when a driver crossed the center line and struck them. Both plaintiffs lost their legs as a result of the injuries they sustained in the accident. Not only did the plaintiffs sue the driver who struck their motorcycle, but they also sued Shannon Colonna, the party who allegedly was texting the defendant motorist. At her deposition, Colonna testified that she had sent the defendant 180 text messages in less than 12 hours on the day of the accident. Colonna also testified that she did not pay attention to whether the recipient of her texts was driving a car at the time or not. On motion, the underlying New Jersey trial court granted Colonna summary judgment holding that she had no legal duty to avoid sending text messages to Best even though she knew he was driving. The Appellate Division reversed, though still affirming summary judgment on behalf of Colonna. While affirming that Colonna could not be held liable because of the lack of proof demonstrating she knew Best was indeed driving at the time the texts were exchanged, the Appellate Division concluded that “a person sending text messages has a duty not to text someone who is driving if the texter knows, or has special reason to know, the recipient will view the text while driving.” (Id. at 507.) Because the plaintiffs had failed to establish that Colonna had such knowledge while texting Best, she could not be held liable for the resulting injuries caused by the accident.
Plaintiff would have this court adopt the reasoning employed by the New Jersey Appellate Division in Kubert to deny Crats-ley’s motion for summary judgment. Plaintiff also relies on Sartori v Gregoire, wherein the Fourth Department held that a passenger in a vehicle could be held liable for verbally or physically distracting a driver immediately prior to an accident. (259 AD2d 1004 [4th Dept 1999].) Further, plaintiff argues that the Restatement (Second) of Torts § 303, which provides, “[a]n act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of . . .a *815 third person ... in such a manner as to create an unreasonable risk of harm to the other,” applies to the facts present here.
In opposition, Cratsley argues that the plaintiffs argument stands in stark contrast to established precedent in New York. Cratsley maintains that she had no duty to control the conduct of the decedent when he was driving. While undoubtedly there are certain circumstances that would establish a third-party duty, Cratsley argues that those facts do not exist here. Crats-ley submits that New York law does not place a legal duty upon an individual who lacks control over the third party’s actions. (Pulka v Edelman, 40 NY2d 781 [1976].)
In Pulka, plaintiffs sued not only the driver who struck a pedestrian, but also the owners of a parking garage. Plaintiffs argued that the garage owners owed a special duty to surrounding pedestrians. The Court of Appeals found that the garage operators owed no duty for an accident that occurred when a patron exited and struck a pedestrian. Pulka stands for the well-settled principle that before causation could be examined, a legal duty first must be established. The Court of Appeals addressed the question of whether owners of the garage owed a duty to pedestrians. The Court of Appeals held that the owners did not owe such a duty, and refused to hold a garage operator liable for the acts of its patrons. Further, the Court of Appeals held that there needed to exist a duty, wherein the garage operator owed a special obligation to a pedestrian from one of its patrons, before liability could be established. Again, the Court held that there existed no special duty. In fact, the Court held that because of the lack of any special duty between the garage operator and its patrons or between the garage operator and pedestrians, and the lack of any reasonable expectation that the garage operator could control or prevent the negligent conduct of its patrons, no legal duty existed. (Id. at 785-786.) Here, the decedent, his estate and his father simply maintain that “[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control.” (D’Amico v Christie, 71 NY2d 76, 88 [1987].)
Decision
The argument advanced by the plaintiff is unique in New York when considering the established body of precedent on the issues of proximate cause, foreseeability, and duty. While *816 states such as New Jersey, as memorialized in Kubert, advance a different standard, courts in New York have either been reluctant to broaden the principle of negligence law or simply refused to do so.
The principle of negligence law is that in order to impose liability for a negligent act, the act must be the proximate cause of the injury that resulted therefrom. (79 NY Jur 2d, Negligence § 47.) In a motor vehicle accident, “[a]n act or omission is a proximate cause of an accident if it was a substantial factor in bringing about the accident. That means if it had such an effect in producing the accident that reasonable men or women would regard it as a cause of the accident.” (Rubin v Pecoraro, 141 AD2d 525, 527 [2d Dept 1988].) The injuries or the damages complained of must have been those which might have been foreseen by a person of ordinary intelligence and prudence, although not necessarily in the precise form in which they occurred. (Kellogg v Church Charity Found. of Long Is., 203 NY 191 [1911].)
The plaintiff wishes to reexamine the long-standing doctrine of negligence law established in Palsgraf v Long Is. R.R. Co. Palsgraf has been hailed as “[p]erhaps the most celebrated of all tort cases” and one of the best-known American common-law cases of all time. (William L. Prosser, Palsgraf Revisited, 52 Mich L Rev 1, 1 [1953].) Although familiar to the bench and bar, the facts of Palsgraf deserve mention. In Palsgraf, a man who was carrying a package ran to board a departing train. One of the railroad guards noticed the man and attempted to pull him on board the train. At the same time, another guard pushed him from behind. In doing so, the man dropped a package containing fireworks to the ground. (Willis W. Hagen II, Accountants’ Common Law Negligence Liability to Third Parties, 1988 Colum Bus L Rev 181 [1988].) “An explosion which occurred caused a scale at the other end of the platform to fall on [Palsgraf], who sued the railroad for damages.” (Id. at 201.) In his majority opinion, Chief Judge Cardozo wrote that the Long Island Railroad was not liable to Palsgraf because it did not owe a duty of care to her. In order to find negligence, the injury to the plaintiff must have been reasonably foreseeable to the defendant. (Palsgraf v Long Is. R.R. Co., 248 NY 339, 341 [1928].) As memorialized by Chief Judge Cardozo, “[i]n every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted *817 or avoided the injury.” (Id. at 342.) “Thus, where the injury to the particular plaintiff is not reasonably foreseeable, the defendant does not have an obligation to refrain from negligent conduct. Since the defendant does not have a duty to exercise ordinary care toward unforeseeable persons, liability for negligence does not result.” (Willis W. Hagen II, Accountants’ Common Law Negligence Liability to Third Parties, 1988 Colum Bus L Rev 181, 201 [1988].) Cardozo held that the defendant could not be liable as he could not have reasonably foreseen a risk of injury to the plaintiff. As such, the defendant’s duty of care did not extend to the plaintiff. In Palsgraf, the defendant could not have reasonably foreseen that the plaintiff, who was standing at the other end of the platform, would be injured as a result of an explosion caused by a falling package that occurred on the opposite end of the platform. As such, because it was not reasonably foreseeable, no duty of care was owed.
Here, plaintiff asks to modify this standard to broaden the scope of duty from what should be reasonably foreseeable. In particular, plaintiff is asking that a party texting a person who could be driving should be held liable for the foreseeable risk that might result from this conduct. Although New Jersey may wish to employ such a departure, this court declines to do so.
The plaintiff’s approach longs to have this court adopt a standard that is a significant retreat from established law in this area. While plaintiff offers a detailed analysis suggesting that there already exists a pad from which to launch this undertaking, much of the precedent cited by plaintiff can be distinguished and does not support her sweeping conclusion.
Relying on Restatement (Second) of Torts § 305, plaintiff suggests that New York law could be construed to impose liability on an individual who could or should have known that their conduct might result in harm to an unrelated third party. Referencing Sartori v Gregoire, plaintiff maintains that a passenger may be liable for verbally or physically distracting a driver immediately prior to a collision. (259 AD2d 1004 [4th Dept 1999].) The facts of Sartori are quite different not only from those present here, but from the standard which Sartori imposes on similarly situated defendants. In Sartori, the “[defendant commenced a third-party action against the passenger in her vehicle, alleging that his unwanted sexual advances towards her immediately before she started her vehicle caused her to forget to turn on the vehicle’s headlights.” (Id. at 1004.) The Fourth Department held that
*818 “[w]hile a passenger in a car may be liable if he distracted the driver while operating the vehicle immediately prior to the accident (see, e.g., Collins v McGinley, 158 AD2d 151, 153, appeal dismissed 77 NY2d 902, 78 NY2d 1002; Whalen v Daugherty, 30 AD2d 604, lv denied 22 NY2d 647), it is undisputed that third-party defendant had no verbal or physical contact with defendant once she started her vehicle and drove out of the parking lot onto the main road where the accident occurred. Thus, third-party defendant’s conduct cannot be deemed a proximate cause of plaintiff’s injuries.” (Id.)
Here, Cratsley was not in the vehicle with the decedent as was the case in Sartori, thus depriving her of the firsthand knowledge the defendant in Sartori enjoyed. Therefore, the holding in Sartori is misplaced. Second, Sartori does not address the issue as to whether a third party, who has no knowledge whether a defendant was driving, owes any duty to others. Clearly there is a greater nexus between a driver and a passenger than the scenario that exists here.
Plaintiff also suggests that there exists precedent that permits the expansion of the foreseeability doctrine. In Davis v South Nassau Communities Hosp., a 2015 New York Court of Appeals case, it was held that medical providers owed a duty to third-party motorists for patients whose medication might affect their ability to drive. (26 NY3d 563 [2015].) Davis involved a motor vehicle accident involving a patient of a hospital who had been treated and prescribed certain medication. A party was intravenously administered a painkiller and a “benzodiazepine drug without warning her that such medication either impaired or could impair her ability to safely operate an automobile.” (Id. at 569.) After her discharge from the hospital the party drove her vehicle, in an impaired state, and struck another vehicle resulting in an accident. The question the Court of Appeals faced was whether the hospital and the physicians who treated the patient owed a duty to the plaintiff to warn that the medication could affect her ability to operate a motor vehicle.
The majority opinion painstakingly examined the record to support its decision. In particular, the Court noted that during the trial, an expert had testified that the “package label for Dilaudid states that it ‘may impair mental and/or physical ability needed to perform potentially hazardous activities such as driving a car or operating machinery.’ ” (Id. at 570.) Further, *819 the expert opined that the same package, “titled Use In Ambulatory Patients . . . states that the drug ‘may impair mental and/or physical ability required for the performance of potentially hazardous tasks (e.g., driving, operating machinery). Patients should be cautioned accordingly.’ ” (Id.) Clearly, the instructions for the medications that were prescribed required the attending physician to warn and direct the nonparty of the ill effects of the medication. These facts supported the Court of Appeals’ expansion of the duty otherwise owed by a defendant to the public at large. Under the facts in Davis, the Court held the “defendants owed . . . plaintiffs a duty to warn [the nonparty] that the medication administered to her either impaired or could have impaired her ability to safely operate an automobile.” (Id. at 571.)
The Court understood that when modifying the question of duty, its reach must be always limited by what is foreseeable. (Id. at 569-570.) As the Court of Appeals acknowledged, “[a]ny expansion of duty is a power to be exercised cautiously, but it is a power that must be used if the changing needs of society are to be met.” (Id. at 570.) As Judge Cardozo observed, while dangers are always present, dangers change as civilizations develop. (MacPherson v Buick Motor Co., 217 NY 382 [1916].) Consequently, in Davis, if a medical provider administers medication that might impair their ability to safely operate a motor vehicle, the “medical provider has a duty to third parties to warn the patient of that danger.” (Davis, 26 NY3d at 570.)
While at first glance the holding in Davis represents a tenuous stretch from the established orthodoxy on the question of negligence, the Court of Appeals detailed its careful historical progression in expanding the existing duty of care. First, in Eiseman v State of New York (70 NY2d 175 [1987]), the Court of Appeals declined to recognize a duty to a large class of unknown individuals as opposed to a “known and identifiable group.” (Davis, 26 NY3d at 573.) In Eiseman, an ex-felon with a known violent history was released from jail and placed into a “special State college program for the disadvantaged.” (Eiseman at 180.) After being placed in the program, the ex-felon raped and murdered a fellow student. The student’s estate sued the State alleging that the State’s physician, who had treated the felon and knew of his violent history and psychological instability, owed a duty to warn the college community at large. The Court declined to extend the principle of duty, maintaining that the State’s treating physician did not owe a *820 duty of care “to members of the . . . community individually.” (Id. at 188-189.)
In Purdy v Public Adm’r of County of Westchester, a resident of a local nursing home, who apparently had use of a vehicle, caused an accident resulting in injury. (72 NY2d 1 [1988].) The resident had a medical condition that left her susceptible to fainting spells and blackouts. The plaintiff in Purdy argued that the nursing home and its resident physician owed a duty to prevent the resident from driving or to at the very least warn her of the dangers of driving given her condition to not only the plaintiff, but an unidentified member of the public. The Court of Appeals recognized that “there exist special circumstances in which there is a sufficient authority and ability to control the conduct of third persons that [have given rise to] a duty to do so.” (Id. at 8.) Notwithstanding that, the Court of Appeals declined to find the existence of a special relationship between the defendants and the resident that would require the defendants to govern their conduct for the benefit of the plaintiff. The Court held that neither the nursing home nor the doctor had the “authority or ability to exercise such control over [the resident’s] conduct so as to give rise to a duty on their part to protect [the] plaintiff—a member of the general public.” (Id. at 8-9.)
The Davis Court also referenced Tenuto v Lederle Labs., Div. of Am. Cyanamid Co. (90 NY2d 606 [1997]), Cohen v Cabrini Med. Ctr. (94 NY2d 639 [2000]), Hamilton v Beretta U.S.A. Corp. (96 NY2d 222 [2001]) and McNulty v City of New York (100 NY2d 227 [2003]) in detailing its evolution to the holding it ultimately reached. In each of these cases, the Court of Appeals gradually expanded the duty owed to other individuals. However, there was always a nexus between the plaintiff and the offending defendant, for whom a special relationship allegedly existed. Mostly, that nexus dealt with an extension of a duty physicians owed their patients. Other cases, most notably Hamilton, where the Court of Appeals concluded that handgun manufacturers did not owe a duty of care in the marketing and distribution of the handguns they manufactured, ostensibly dealt with a large, undefined group that the named defendant could not possibly foresee a duty to cover. Davis dealt specifically with a doctor’s failure to caution an unrelated party about the side effects of prescribed medication that contained specific instructions with appropriate warnings. Here, no such nexus or specificity exists that could link an individual, who did not *821 have knowledge that the tortfeasor was driving, to an unnamed plaintiff of the general community who was involved in an unfortunate, but unforeseen, accident.
Inasmuch as the Court of Appeals expanded the breadth of the duty owed in a negligence case, it did so cautiously and reluctantly. The Court warned not to misinterpret its decision as a full erosion of the duty of care. Instead, the Court heralded “while the temptation is always great to provide a form of relief to one who has suffered, . . . the law cannot provide a remedy for every injury incurred.” (Davis, 26 NY3d at 580, citing Albala v City of New York, 54 NY2d 269 [1981].) More directly, “[n]ot all mistakes . . . result in liability.” (Id.)
Judge Stein’s dissent, while not controlling, was certainly instructive in dissuading a haphazard expansion of the concept of duty. Cautioning not to take sympathy into consideration, she advised that courts must be mindful of the precedential, and consequential, future effects of their rulings and “limit the legal consequences of wrongs to a controllable degree.” (Id. at 583, citing Lauer v City of New York, 95 NY2d 95 [2000], quoting Tobin v Grossman, 24 NY2d 609 [1969].) This court agrees that, no matter how careless it may seem, not all conduct creates a duty to an unknown. This is especially true when the record fails to establish that the defendant had any knowledge that the decedent was driving the vehicle that ultimately struck the plaintiff. The absence of that proof, as well as the established reluctance to expand a duty to persons with whom a tenuous nexus exists, requires summary judgment. To expand the duty as plaintiff here seeks would set a crushing exposure to liability, which courts generally must protect against. (Strauss v Belle Realty Co., 65 NY2d 399 [1985].)
If the theory advanced by the plaintiff here is adopted, the expansion of liability to individuals who text message would be exponential. Should a court accept the plaintiff’s proposition, a party texting another, regardless of any specific knowledge, could be liable for an injury caused by the party receiving the text messages simply by virtue of the text being sent. In this day and age, where texts are routinely sent to, for example, advise the public of breaking news, that prescriptions are ready for pick up, or that a bill is to be paid, the sender would be responsible for any injuries that could be caused should a driver become distracted by their receipt. With texting being so prevalent, the potential expansion as contemplated by the plaintiff is astronomical.
*822 This court is not ignorant of the many steps taken by not only this state, but others in the nation, to protect against motorists texting while driving. While that certainly is not the only issue presented for consideration, this court does not believe it is the province of a court to establish a precedent for want of a statute that otherwise has not been considered, let alone approved, by a legislative body. Though many would prefer a court simply to make law where either a legislative body or executive has failed to do so, this court does not believe that is its role. It is not the role of the judiciary to sit on high and promulgate what it believes should have been a policy determination made elsewhere. Instead, the courts have deferred to the wisdom, or absence of it, of the legislature in defining what is actionable and what is not. (Rosenfeld v Isaacs, 79 AD2d 630 [2d Dept 1980]; Mobil Oil Corp. v Higginbotham, 436 US 618 [1978].) In short, courts are not free to decide what should be founded in statutory authority. This is the realm of the legislature. Simply put, if the legislature wishes to make actionable a third party’s texting to a motorist, notwithstanding their lack of knowledge that the person to whom they are texting is driving, it should do so. This court refuses to establish this cause of action by judicial fiat.
Accordingly, the motion for summary judgment made by defendant, Taylor Cratsley, is hereby granted.