Stephanie L. v House of The Good Shepherd (2020 NY Slip Op 04643)





Stephanie L. v House of The Good Shepherd


2020 NY Slip Op 04643


Decided on August 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, CURRAN, WINSLOW, AND BANNISTER, JJ.


189 CA 18-02000

[*1]STEPHANIE L. AND PETER L., INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF M.L., AN INFANT, PLAINTIFFS-RESPONDENTS,
v
HOUSE OF THE GOOD SHEPHERD AND COUNTY OF ONEIDA, DEFENDANTS-APPELLANTS. 






BARCLAY DAMON LLP, SYRACUSE, MAURO LILLING NAPARTY LLP, WOODBURY (RICHARD J. MONTES OF COUNSEL), FOR DEFENDANT-APPELLANT HOUSE OF THE GOOD SHEPHERD. 
KENNEY SHELTON LIPTAK NOWAK LLP, JAMESVILLE (DANIEL CARTWRIGHT OF COUNSEL), FOR DEFENDANT-APPELLANT COUNTY OF ONEIDA.
THE KINDLON LAW FIRM, PLLC, ALBANY (GENNARO D. CALABRESE OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS.


 Appeals from an order of the Supreme Court, Oneida County (Erin P. Gall, J.), entered October 11, 2018. The order, among other things, denied the motions of defendants to dismiss the amended complaint. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting the motion of defendant House of the Good Shepherd in part and dismissing the first cause of action insofar as asserted by plaintiffs, as parents and natural guardians of M.L., an infant, and dismissing the second cause of action insofar as asserted by plaintiffs, individually, and as modified the order is affirmed without costs.
Memorandum: In May 2008, plaintiffs, who were the biological parents of a then-three-month-old child (biological child), accepted placement of a nine-year-old child (foster child) from defendant House of the Good Shepherd (Good Shepherd), a not-for-profit corporation that administered a foster care program. At the time of the placement, the foster child was in the care of the County of Oneida Department of Social Services. Plaintiffs were informed that the foster child had been sexually abused by members of his biological family and that he exhibited some behavioral problems. At all relevant times, however, plaintiffs were unaware that the foster child had a history of animal abuse and engaging in sexually inappropriate behavior.
In early 2012, plaintiffs started the process of adopting the foster child, which was completed in December 2012. In the year leading up to the adoption, the foster child began acting in a sexually inappropriate manner toward the biological child and other children. One day after the adoption was finalized, the foster child sexually assaulted the biological child. Thereafter, plaintiffs discovered that they had not been given a complete set of records concerning the foster child, which records would have revealed his full history of engaging in animal abuse and sexually inappropriate behavior. The foster child was removed from plaintiffs' home, and the adoption was vacated.
Based on defendants' alleged failure to fully disclose the foster child's complete history, plaintiffs commenced this action in August 2016. They asserted, individually and on behalf of the biological child, causes of action for fraud and negligence against Good Shepherd and asserted, on behalf of the biological child, a cause of action for negligent infliction of emotional [*2]distress against defendants and a cause of action for negligence against defendant County of Oneida. Defendants appeal from an order that, inter alia, denied their respective motions to dismiss the amended complaint against them.
Initially, as Good Shepherd contends and plaintiffs correctly concede, Supreme Court erred in denying the motion of Good Shepherd insofar as it sought dismissal of those claims against it that plaintiffs expressly abandoned, i.e., the first cause of action, for fraud, to the extent asserted on behalf of the biological child and the second cause of action, for negligence, to the extent asserted by plaintiffs individually. Thus, we modify the order accordingly (see Beechler v Kill Bros. Co., 170 AD3d 1606, 1608 [4th Dept 2019], lv denied in part and dismissed in part 34 NY3d 973 [2019]; Mortka v K-Mart Corp., 222 AD2d 804, 804 [3d Dept 1995]).
We reject, however, Good Shepherd's contention that the fraud cause of action insofar as asserted in plaintiffs' individual capacity was barred by the statute of limitations and that the court therefore erred in denying its motion to that extent. "The statute of limitations for a cause of action sounding in fraud is six years from the date of the wrong, or two years from the date the fraud could reasonably have been discovered, whichever is later" (Siler v Lutheran Social Servs. of Metro. N.Y., 10 AD3d 646, 648 [2d Dept 2004]; see CPLR 213 [8]). Good Shepherd relies on its admission in its verified answer that, "[a]t all times relevant," it knew that the foster child had a history of animal abuse and behaving in a sexually inappropriate manner. Good Shepherd contends that its admission established that it knew about the foster child's relevant history when he was first placed with plaintiffs in May 2008. Thus, it argues that the fraud cause of action accrued in 2008, causing the statute of limitations to expire in 2014. We disagree.
A defendant's mere knowledge of something is not an element of a fraud cause of action; instead, a fraud cause of action requires a showing of, inter alia, the false representation of a material fact with the intent to deceive (see generally Ross v Louise Wise Servs., Inc., 8 NY3d 478, 488 [2007]). Thus, even assuming, arguendo, that Good Shepherd knew of the foster child's history of animal abuse and engaging in sexually inappropriate behavior as early as May 2008, we conclude that its knowledge thereof did not demonstrate that the alleged fraud occurred at that time. Good Shepherd submitted no evidence that, in May 2008, it falsely represented the foster child's relevant history with the intent to deceive plaintiffs. Thus, it did not establish as a matter of law that the fraud cause of action accrued in 2008 (see generally Chaplin v Tompkins, 173 AD3d 1661, 1662 [4th Dept 2019]). Moreover, Good Shepherd submitted the amended complaint, wherein plaintiffs alleged that, on numerous occasions in early 2012, they contacted Good Shepherd about the foster child's sexually inappropriate behavior and that, on each occasion, Good Shepherd assured them that the foster child had no history of that type of behavior. We therefore conclude that Good Shepherd failed to meet its initial burden of establishing that the fraud cause of action asserted in 2016 was barred by the applicable six-year statute of limitations (see CPLR 213 [8]).
Defendants contend that the court erred in denying their motions with respect to the negligence causes of action insofar as asserted on behalf of the biological child because they did not owe a duty to that child. We also reject that contention. "In the context of a motion to dismiss pursuant to CPLR 3211, [the court] determine[s] only whether the facts as alleged [in the complaint] fit within any cognizable legal theory' " (Davis v South Nassau Communities Hosp., 26 NY3d 563, 572 [2015], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994] [emphasis added]). " [T]he criterion is whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one' " (Leon, 84 NY2d at 88 [emphasis added]). Our review, therefore, is limited to whether plaintiffs, on behalf of the biological child, have a cause of action sounding in negligence based on defendants' failure to warn of the foster child's complete behavioral history.
The "threshold question" in any negligence action is whether a defendant owes a "legally recognized duty of care to [a] plaintiff" (Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 232 [2001]), which presents "a legal issue for the courts to decide" (Oddo v Queens Vil. Comm. for Mental Health for Jamaica Community Adolescent Program, Inc., 28 NY3d 731, 735 [2017] [internal quotation marks omitted]). To establish the existence of a legal duty, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her . . . in order to avoid subjecting an actor to limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act" (Hamilton, 96 NY2d at 232 [*3][internal quotation marks omitted]). "[A]ny extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs" (id.).
Additionally, as a general rule a defendant does not have a duty "to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter defendant can exercise such control" (id. at 233 [internal quotation marks omitted]). In determining whether a defendant owes a duty to a plaintiff injured by a third-person tortfeasor, the court must consider whether there is a relationship either: (1) "between [the] defendant and [the] third-person tortfeasor that encompasses [the] defendant's actual control of the third person's actions," or (2) "between [the] defendant and [the] plaintiff that requires [the] defendant to protect [the] plaintiff from the conduct of others" (id.). The central concern under both of those prongs is whether "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm" (id. [emphasis added]). In other words, the "calculus is such that [courts] assign the responsibility of care to the person or entity that can most effectively fulfill th[e] obligation [of protecting against the risk of harm] at the lowest cost" (Davis, 26 NY3d at 572). Under those circumstances, "the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship" (Hamilton, 96 NY2d at 233).
In Davis (26 NY3d at 569-570), the Court of Appeals recently determined that the defendant medical providers owed a duty to the plaintiffs, who were injured in a car accident caused by the defendants' patient, to warn their patient about the danger of medication administered by the defendants that may have impaired the patient's ability to safely operate an automobile. The Court noted that, by not giving such a warning, the defendants "create[d] a peril affecting every motorist in [the patient's] vicinity" (id. at 577). In determining that a duty existed, the Court noted that the defendants were "the only ones who could have provided a proper warning of the effects of that medication" (id.). Additionally, the Court determined that: (1) the cost of the duty imposed was small; (2) the duty could be easily satisfied "merely by advising one to whom such medication is administered of the dangers of that medication"; and (3) its decision did not "ero[de] . . . the prevailing principle that courts should proceed cautiously and carefully in recognizing a duty of care" (id. at 579-580 [internal quotation marks omitted]).
Here, we conclude that defendants owed a duty of care to the biological child to warn plaintiffs, as the child's parents, of the foster child's complete behavioral history (see generally id. at 577). Defendants were the entities that oversaw the foster child's placement with plaintiffs in the four years preceding the adoption. In our view, the relationship between defendants and the biological child here was far more substantive than the relationship that supported the finding of a duty in Davis (see id.). Although defendants contend that they did not owe the biological child a duty because they lacked control over the foster child during the four years that he lived with plaintiffs, control over a third-person tortfeasor is just one way to establish a duty. As noted above, a duty may also exist where "there is a relationship . . . between [the] defendant and [the] plaintiff that requires [the] defendant to protect [the] plaintiff from the conduct of others," and "the key . . . is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm" (Hamilton, 96 NY2d at 233 [emphasis added]).
The amended complaint in this action alleged a relationship between the parties that placed defendants in the best position to protect the biological child from the risk of harm and that required defendants to protect the child from the sexual abuse by the foster child by warning plaintiffs of the foster child's history of sexually inappropriate behavior (see generally id.). Defendants were in the best position to protect the biological child from that sexual abuse because of their superior knowledge of the foster child's behavioral history and because of the relative ease with which they could have apprised plaintiffs of that history. Indeed, defendants were the only entities that "could have provided a proper warning" regarding the foster child's full behavioral history (Davis, 26 NY3d at 577).
Moreover, contrary to defendants' contention, finding a duty here would not raise the "specter of limitless liability . . . because the class of potential plaintiffs to whom the duty is owed[—children of prospective adoptive parents—]is circumscribed by the relationship" (id. at 589 [internal quotation marks omitted]). Additionally, we conclude that the cost of the duty imposed on defendants is a small one, i.e., simply disclosing to plaintiffs the information [*4]regarding the foster child's behavioral history that was in defendants' possession. Indeed, defendants could have met their duty largely by complying with the disclosure requirements of Social Services Law § 373-a. Moreover, determining that defendants had a duty here does not erode "the prevailing principle that courts should proceed cautiously and carefully in recognizing a duty of care" (Davis, 26 NY3d at 580). We are not determining that defendants owed a duty to the public at large, but rather to a very small, readily ascertainable population—children of prospective adoptive parents. Thus, we conclude that "reasonable persons would recognize [the duty] and agree that it exists" (id. at 577 [internal quotation marks omitted]).
Finally, we reject defendants' contention that the court erred in denying the motions with respect to the negligent infliction of emotional distress cause of action. Contrary to defendants' assertion, "extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress" (Taggart v Costabile, 131 AD3d 243, 255 [2d Dept 2015]; see generally Ornstein v New York City Health and Hosps. Corp., 10 NY3d 1, 6 [2008]). We have considered defendants' remaining contentions and conclude that none warrants further modification or reversal of the order.
Entered: August 20, 2020
Mark W. Bennett
Clerk of the Court