■ VLADIMIR SUDIT, Doing Business as VS INTERNATIONAL, Appellant, v ESTHER M. LABIN et al., Defendants, and CHAIM LAX et al., Respondents. [50 NYS3d 430]—

In an action to foreclose a mortgage, the plaintiff appeals from so much of an order of the Supreme Court, Kings County (Schmidt, J.), dated October 24, 2013, as granted that branch of the motion of the defendants Chaim Lax and First Meridian Mortgage which was for leave to amend their answer to assert additional affirmative defenses and counterclaims and, sua sponte, imposed an equitable remedy permitting those defendants to pay the plaintiff $35,000 in exchange for a release of the plaintiff's equitable lien from a condominium unit owned by the defendant Chaim Lax.

Ordered that on the Court's own motion, the notice of appeal from so much of the order as, sua sponte, imposed an equitable remedy permitting the defendants Chaim Lax and First Meridian Mortgage to pay the plaintiff $35,000 in exchange for a release of the plaintiff's equitable lien from the condominium unit owned by the defendant Chaim Lax is deemed to be an application for leave to appeal from that portion of the order, and leave to appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof, sua sponte, imposing an equitable remedy permitting the defendants Chaim Lax and First Meridian Mortgage to pay the plaintiff $35,000 in exchange for a

release of the plaintiff's equitable lien from the condominium unit owned by the defendant Chaim Lax; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The majority of the defendants originally named in this foreclosure action were purchasers or mortgagees with respect to condominium units in a condominium project (hereinafter the condominium) developed by an entity called Bedford Place, LLC (hereinafter Bedford Place). Ultimately, most of the defendants settled with the plaintiff. However, no settlement was reached with the defendant Chaim Lax, the purchaser of Unit 3 in the condominium, and his mortgagee, the defendant First Meridian Mortgage, and their respective successors in interest, Moshe Leib Lax and Zlaty Schwartz, as preliminary executors of the estate of Chaim Lax, and Citibank, N.A. as successor trustee to US Bank National Association, as trustee for MASTR Adjustable Rate Mortgages Trust 2007-HF1, Mortgage Pass-Through Certificates, Series 2007-HF1 (hereinafter collectively the Lax defendants).

In 2003, the plaintiff, a private lender, agreed to lend Mendel Brach and Moshe Roth, the principals of Bedford Place, $2.5 million to refinance a mortgage held by RCG Longview, L.P. (hereinafter RCG), on the condominium. On July 17, 2003, the plaintiff entered into a "Mortgage Extension and Modification Agreement" (hereinafter the MEM agreement), which provided, inter alia, that, in exchange for his payment of $2.5 million to RCG, RCG would assign its mortgage (hereinafter the RCG mortgage) to the plaintiff. The plaintiff fulfilled his part of the bargain by wiring RCG his payment of $2.5 million but, instead of assigning its mortgage to the plaintiff, RCG recorded a full satisfaction of the RCG mortgage (hereinafter the RCG mortgage satisfaction). Several subsequent agreements were made between the plaintiff and the principals of Bedford Place, in which Brach and Roth affirmed that they owed the plaintiff $2.5 million, secured by a mortgage against the condominium, and undertook to pay the plaintiff the money by certain dates. However, Brach and Roth failed to pay the plaintiff, and, on October 10, 2003, without the plaintiff's knowledge, they mortgaged the condominium to a new lender, Mercury Capital Corporation to secure a loan in the amount of $3.5 million (hereinafter the Mercury mortgage). Both the Mercury mortgage and the RCG mortgage satisfaction were recorded before the MEM agreement was recorded on July 5, 2004.

Starting in 2004, the plaintiff commenced several actions against Brach, Roth, RCG, Mercury Capital, and others, alleg-

ing, inter alia, fraud, conversion, and breach of contract, and seeking to annul the recorded RCG mortgage satisfaction. The parties in those actions entered into two stipulations of settlement (Settlement I and Settlement II, respectively) with Bach, Roth, and Bedford Place. In Settlement I, which was entered into on July 24, 2006, the parties thereto agreed, among other things, that, upon the sale of any of the condominium units, the plaintiff would receive $35,000 at the closing, and, in exchange, would deliver a release to the purchaser of that unit. However, on March 8, 2007, upon a motion by Roth, the Supreme Court vacated Settlement I in its entirety on the ground that Roth had not consented to it.

Between July 24, 2006, and March 8, 2007, several persons, including Lax, purchased units in the condominium. While some of the purchasers availed themselves of the terms of Settlement I and tendered $35,000, others, including Lax, failed to do so. Unlike Settlement I, Settlement II, which was entered into on June 29, 2007, contained no option for purchasers of the units to obtain a release from the plaintiff in exchange for $35,000. In fact, an addendum to Settlement II provided, instead, that, after October 29, 2007, the plaintiff could "immediately commence foreclosure proceedings on any and all unreleased liens on Bedford Place." On April 18, 2008, the plaintiff commenced the instant action to foreclose on those liens.

In the order appealed from, which determined, inter alia, the plaintiff's pending motion for summary judgment, the Supreme Court, sua sponte, fashioned an equitable remedy, based on the terms of Settlement I, permitting the Lax defendants and other unit holders to pay $35,000 and to receive, in exchange, a release from the plaintiff's equitable lien. The plaintiff contends, in effect, that the court exceeded the scope of its authority by, sua sponte, fashioning a remedy that was not supported by the proof offered and, in fact, was inconsistent with the legal position adopted by the Lax defendants throughout this litigation. We agree.

"Generally, a court may, in its discretion, grant relief that is warranted by the facts plainly appearing on the papers on both sides, if the relief granted is not too dramatically unlike the relief sought, the proof offered supports it, and there is no prejudice to any party" (*Emigrant Mtge. Co., Inc. v Fisher*, 90 AD3d 823, 824 [2011] [internal quotation marks omitted]). Here, the Supreme Court strayed from this principle. Indeed, the Lax defendants were not in the same position as other unit holders, who had expressly relied on the terms of Settlement I

at the time of their purchase. Instead, the Lax defendants' position, since the beginning of this case, was that they had no notice of the plaintiff's equitable claim, including the terms of Settlement I, and believed that the subject property was encumbered only by the Mercury mortgage. Indeed, the success of the Lax defendants' affirmative defense and counterclaim based on equitable subrogation is contingent upon their ability to establish that they lacked actual notice of the plaintiff's equitable claim (*see Arbor Commercial Mtge., LLC v Associates at the Palm, LLC*, 95 AD3d 1147, 1149-1150 [2012]). Under the circumstances of this case, there was an insufficient factual basis upon which the court could have extended the benefit of Settlement I to the Lax defendants and, therefore, the relief granted by the court, sua sponte, exceeded the scope of its authority (*see Emigrant Mtge. Co., Inc. v Fisher*, 90 AD3d at 824-825; *see also Flagstar Bank, FSB v Walker*, 112 AD3d 885, 886 [2013]; *Kay Found. v S & F Towing Serv. of Staten Is., Inc.*, 31 AD3d 499, 501-502 [2006]).

In the same order, the Supreme Court granted that branch of the Lax defendants' motion which was for leave to amend their answer to assert affirmative defenses and counterclaims of equitable subrogation and unjust enrichment. The plaintiff also appeals from that portion of the order.

"A party may amend his or her pleading . . . at any time by leave of court" (CPLR 3025 [b]). "Applications to amend pleadings are within the sound discretion of the court" (*Kimso Apts., LLC v Gandhi*, 24 NY3d 403, 411 [2014]; *see Edenwald Contr. Co. v City of New York*, 60 NY2d 957, 959 [1983]). "As a general rule, leave to amend a pleading should be freely granted in the absence of prejudice to the nonmoving party where the amendment is not patently lacking in merit" (*Davis v South Nassau Communities Hosp.*, 26 NY3d 563, 580 [2015] [internal quotation marks omitted]; *see Coleman v Worster*, 140 AD3d 1002, 1003 [2016]). "Mere lateness is not a barrier to the amendment. It must be lateness coupled with significant prejudice to the other side, the very elements of the laches doctrine" (*Edenwald Contr. Co. v City of New York*, 60 NY2d at 959 [internal quotation marks omitted]; *see Coleman v Worster*, 140 AD3d at 1003; *HSBC Bank v Picarelli*, 110 AD3d 1031, 1032 [2013]). "The burden of establishing prejudice is on the party opposing the amendment" (*Kimso Apts., LLC v Gandhi*, 24 NY3d at 411; *see Caceras v Zorbas*, 74 NY2d 884, 885 [1989]; *Coleman v Worster*, 140 AD3d at 1003).

Here, the plaintiff does not allege any prejudice aside from the lateness itself, nor does he argue that the amendment is

patently lacking in merit (*see Davis v South Nassau Communities Hosp.*, 26 NY3d at 580). Indeed, the new affirmative defenses and counterclaims are consistent with the position taken by the Lax defendants since the beginning of this lawsuit (i.e., that they had no actual notice of the plaintiff's equitable claim) and, therefore, should come as no surprise to the plaintiff.

The plaintiff's remaining contentions are without merit.

Accordingly, the Supreme Court providently exercised its discretion in granting that branch of the Lax defendants' motion which was for leave to amend their answer to assert affirmative defenses and counterclaims of equitable subrogation and unjust enrichment. Chambers, J.P., Austin, Hinds-Radix and Barros, JJ., concur.