Lennon v 56th & Park(NY) Owner, LLC (2021 NY Slip Op 04972)





Lennon v 56th & Park(NY) Owner, LLC


2021 NY Slip Op 04972


Decided on September 15, 2021


Appellate Division, Second Department


Dillon, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LEONARD B. AUSTIN
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2018-07336
 (Index No. 508298/14)

[*1]Sean Lennon, appellant, 
v
56th and Park(NY) Owner, LLC, et al., respondents.



APPEAL by the plaintiff, in an action to recover damages for personal injuries, from an order of the Supreme Court (Bernard J. Graham, J.), dated April 30, 2018, and entered in Kings County. The order granted the defendants' motion pursuant to CPLR 3025(b) for leave to amend their answer, and thereupon, for summary judgment dismissing the second amended complaint.



Sacks and Sacks, LLP, New York, NY (Scott N. Singer of counsel), for appellant.
Malapero Prisco & Kaluber, LLP, New York, NY (Francis B. Mann, Jr., of counsel), for respondents.



DILLON, J.P.


OPINION & ORDER
,
A plaintiff's claim may be barred by the doctrine of collateral estoppel when there is a prior determination from an administrative board involving the same subject matter. When and whether a plaintiff is actually collaterally estopped from obtaining a recovery in a later action invokes a maxim that is frequently and generally heard by attorneys advising clients and by jurists deciding issues: It depends. Below, we discuss the variables that must be examined in determining when a workers' compensation board's denial of a claim for benefits operates to collaterally estop the plaintiff from recovering damages in a personal injury action involving the same alleged accident.
I. Facts
The plaintiff alleges that on July 18, 2014, he was injured while working at a construction site located in Manhattan. According to the plaintiff, the injuries occurred when the hoist elevator on which he was riding made multiple and sudden unanticipated rises and drops.
On July 31, 2014, the plaintiff filed a claim for workers' compensation benefits as a result of knee injuries allegedly sustained during the incident at the construction site. On November 24, 2014, a hearing was held before an administrative law judge (hereinafter ALJ). The plaintiff was represented by an attorney at the workers' compensation hearing. The plaintiff testified at the hearing about the occurrence underlying the claim, the violent movements of the hoist when it rose and dropped "a bunch of times" while he and several other workers were upon it, and about the knee injuries he allegedly sustained. The plaintiff could neither recall the names of any of the other workers who were with him on the hoist at the time, nor identify any other person with knowledge of the alleged malfunction. In contrast, Robert O'Reilly, the general superintendent of [*2]the defendant Atlantic Hoisting & Scaffolding, LLC,[FN1] testified at the hearing that safety features that were in place would have prevented the accident from occurring in the mechanical way described by the plaintiff. Moreover, the safety features would have prompted a regulatory 45-minute evaluation and re-set of the equipment after any such event, and required the generation of an incident report, none of which occurred on the date in question. David Cannamela, a medical administrator for a subcontractor at the worksite, testified that after receiving a later medical bill related to the plaintiff, he investigated the accident date and determined that nothing out of the ordinary had occurred on that date. All of the witnesses who testified were cross-examined on the witness stand. At the conclusion of the hearing, closing arguments were presented by counsel.
In a decision filed December 23, 2014, the ALJ denied the plaintiff's workers' compensation claim on the ground that the ALJ did "not believe that the hoist elevator malfunctioned in any way, much less in the drastic and dramatic way described by [the plaintiff]." The ALJ noted from the plaintiff's testimony his inconsistent descriptions of the event itself, the injuries attributed to it, and the failure of the plaintiff's initial treating physician to find from imaging scans one week after the occurrence any knee condition other than degenerative changes. The ALJ concluded the "claim to be, at best, an afterthought." In other words, the ALJ determined that the alleged accident did not actually happen in any manner related to the claimed injury. Upon an administrative review of the determination that had been requested by the plaintiff, the Workers' Compensation Board affirmed the findings and conclusion of the ALJ. No further review of the administrative proceedings was sought in any court.
By summons and complaint, first amended complaint, and second amended complaint, the plaintiff commenced this action against the defendants, alleging that they were liable for damages for their common-law negligence and violations of Labor Law §§ 200, 240(1), and 241(6). The defendants, 56th and Park(NY) Owner, LLC, Bovis Lend Lease LMB, Inc., Lend Lease (US) Construction LMB, Inc., and Atlantic Hoisting & Scaffolding, LLC, were the owner, construction managers, and a contractor at the site, respectively, and were jointly represented by the same attorney. On March 22, 2016, the defendants interposed an answer to the second amended complaint, which contained eight affirmative defenses. However, the answer did not include any affirmative defense that the litigation was barred by the doctrines of collateral estoppel or res judicata.
Thereafter, the parties performed the usual and customary discovery undertaken in worksite construction-accident actions. On April 7, 2017, the plaintiff filed a note of issue and certificate of readiness, certifying that discovery had been completed and that the action was ready for trial.
On September 7, 2017, the defendants moved pursuant to CPLR 3025(b) for leave to amend their answer to include, for the first time, an affirmative defense that the plaintiff's claim was barred by, inter alia, the doctrine of collateral estoppel. Further, upon leave to amend, the defendants sought summary judgment dismissing the second amended complaint. As for summary judgment, the defendants argued that the ALJ's determination, as affirmed by the Workers' Compensation Board, that the underlying event was not causally related to the claim, collaterally estopped the plaintiff from re-asserting the same claim before the Supreme Court.
The plaintiff opposed both leave to amend and summary judgment. Regarding the proposed amendment to the answer, the plaintiff argued that the defendants' motion was untimely as the defendants were actually aware of the ALJ's determination as early as July 2015. The plaintiff also argued that the issue before the Workers' Compensation Board was not identical to the broader issues present in the personal injury litigation. Additionally, regarding that branch of the defendants' motion which was for summary judgment dismissing the second amended complaint, the plaintiff argued the merits of his common-law negligence and Labor Law claims asserted against the various named defendants.
In the order appealed from dated April 30, 2018, the Supreme Court granted that branch of the defendants' motion which was for leave to amend their answer to include, inter alia, the affirmative defense of collateral estoppel, and thereupon, granted that branch of their motion which was for summary judgment dismissing the second amended complaint on the basis of that [*3]defense. For reasons discussed below, we affirm.
II. Collateral Estoppel
Collateral estoppel is sometimes referred to as issue preclusion (see HSBC Bank USA, N.A. v Pantel, 179 AD3d 650, 651; Manko v Gabay, 175 AD3d 484, 486; Bruno v Bank of N.Y., 172 AD3d 992, 994). The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity" (Ryan v New York Tel. Co., 62 NY2d 494, 500; see Kaufman v Eli Lilly & Co., 65 NY2d 449, 455; Coleman v J.P. Morgan Chase Bank N.A., 190 AD3d 931, 931-932; BT Holdings, LLC v Village of Chester, 189 AD3d 754, 758; Napoli v Breaking Media, Inc., 187 AD3d 1026, 1027; Bank of N.Y. Mellon v Chamoula, 170 AD3d 788, 790; Douglas Elliman, LLC v Silver, 143 AD3d 752, 754). One of the purposes of the doctrine is to conserve the resources of the courts and litigants (see Mayers v D'Agostino, 58 NY2d 696, 698; Gilberg v Barbieri, 53 NY2d 285, 291).
The collateral estoppel doctrine gives conclusive effect to prior determinations when two conditions are met. There must be "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling" (Buechel v Bain, 97 NY2d 295, 303-304; see Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349; Ryan v New York Tel. Co., 62 NY2d at 500-501; Lamberti v Plaza Equities, LLC, 161 AD3d 837, 839). Collateral estoppel is described as a flexible doctrine, and a determination of whether a party had a full and fair opportunity to litigate in the prior proceeding requires a "practical inquiry into the realities of [the prior] litigation" (Gilberg v Barbieri, 53 NY2d at 292 [internal quotation marks omitted]; Auqui v Seven Thirty One Ltd. Partnership, 22 NY3d 246, 255 [internal quotation marks omitted]). The burden of proof is upon the proponent of collateral estoppel to establish the duplicative identity of the party against whom the doctrine is sought to be applied and the issues of the two proceedings. The party seeking to avoid application of the doctrine has the ultimate burden of establishing the absence of a full and fair opportunity to have litigated the earlier matter (see Matter of Dunn, 24 NY3d 699, 704; Moran v County of Suffolk, 189 AD3d 1219, 1221; Suter v Ross, 179 AD3d 1127, 1129; HSBC Bank USA, N.A. v Pantel, 179 AD3d at 651; Bank of N.Y. Mellon v Chamoula, 170 AD3d at 790).
Determinations rendered by quasi-judicial administrative agencies may qualify for collateral estoppel effect (see Auqui v Seven Thirty One Ltd. Partnership, 22 NY3d at 255; Jeffreys v Griffin, 1 NY3d 34, 39; Mavco Realty Corp. v M. Slayton Real Estate, Inc., 77 AD3d 892, 893) so long as the requirements of the doctrine, as described above, are satisfied. Determinations of the Workers' Compensation Board are potentially within the scope of the doctrine (e.g. Roserie v Alexander's Kings Plaza, LLC, 171 AD3d 822, 823 [failure of plaintiff to establish for workers' compensation a causally related injury from alleged accident involving an elevator]; Emanuel v MMI Mech., Inc., 131 AD3d 1002, 1003 [same]; McRae v Sears, Roebuck & Co., 2 AD3d 419 [same, but as to a ladder]; Rigopolous v American Museum of Natural History, 297 AD2d 728 [plaintiff collaterally estopped from litigating a Labor Law § 240 cause of action, where the Workers' Compensation Board had previously determined that the accident had occurred on the ground and did not involve elevation]).
Apart from the foregoing, collateral estoppel is included in the menu of defenses that, if not raised in an answer as an affirmative defense or in a pre-answer motion to dismiss, is waived (see CPLR 3211[a][5]; [e]; Onate v Fernandez, 184 AD3d 725, 727; Browne v Board of Educ., 122 AD3d 563; Ofman v Ginsberg, 89 AD3d 908, 909). The defendants did not assert the doctrine as an affirmative defense in their answer to the second amended complaint. Therefore, for the defendants to rely upon the doctrine as a potential defense to the action, they could not do so absent leave of court to amend their answer and thereby revive the collateral estoppel defense.
III. The Supreme Court did not Improvidently Exercise its Discretion in Permitting the Defendants to Amend their Answer
The law on amending pleadings by leave of court is well-defined, straight forward, and subject to three basic overarching rules. The first rule, set forth by the plain language of CPLR 3025(b), is that leave to amend pleadings "shall be freely given upon such terms as may be just." While the legislature's use of the word "shall" conveys the language of mandate, the granting of leave to amend is not actually required in any given instance, as the statute is subject to a second rule [*4]that qualifies it. The second rule, a creature of case law, is that the decision of whether to grant or deny leave to amend is subject to the discretion of the trial court (see Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959; Murray v City of New York, 43 NY2d 400, 404-405; Yong Soon Oh v Hua Jin, 124 AD3d 639, 640). The third rule governing the amendment of pleadings defines when and whether the court's discretion should be exercised in favor of the moving party. Under the third rule, which also evolved from case law, leave to amend need not be granted if the proposed amendment causes prejudice or surprise to another party (see HSBC Bank USA, N.A. v Corrales, 194 AD3d 1023; Flanders v E.W. Howell Co., LLC, 193 AD3d 822; Kaur v Lema, 187 AD3d 870; Myung Hwa Jang v Mang, 164 AD3d 803, 804; Maldonado v Newport Gardens, Inc., 91 AD3d 731; Lucido v Mancuso, 49 AD3d 220, 222), or alternatively, if the proposed amendment is palpably insufficient or patently devoid of merit (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 580; Kaur v Lema, 187 AD3d at 870; Citimortgage, Inc. v Heyman, 186 AD3d 1487, 1488; Markowits v Friedman, 144 AD3d 993, 995; Maldonado v Newport Gardens, Inc., 91 AD3d at 732). The burden of proof in establishing prejudice or surprise, or that the proposed amendment lacks merit, falls to the party opposing the motion for leave to amend (see Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411; Wells Fargo Bank, N.A. v Spatafore, 183 AD3d 853; Coleman v Worster, 140 AD3d 1002, 1003), which is consistent with the general tenor of CPLR 3025(b) that leave to amend otherwise be freely granted. Distilled to its essence, courts should be liberal in permitting the amendment of pleadings unless there is a reason grounded in prejudice to a party or the absence of merit to warrant a different result.
When a party appeals an order granting or denying leave to amend a pleading, a fourth rule is triggered unique to the reviewing court; namely, whether nisi prius, in permitting or denying leave, improvidently exercised its discretion in determining the issue (see Ditech Fin., LLC v Khan, 189 AD3d 1360; Yong Soon Oh v Hua Jin, 124 AD3d at 641; McKenzie v Ostreich, 300 AD2d 371). There is no objective computer formula for examining matters of discretion at the trial and appellate levels for the potential amendment of pleadings. An evaluation of whether a party will be prejudiced by an amendment necessarily involves separate and overlapping judicial consideration of fairness, common sense, and judgment. Moreover, a court may consider the timeliness or untimeliness of the motion for leave to amend, how long the party seeking the amendment was aware of the facts upon which the motion was predicated, whether a reasonable excuse was offered for any such delay (see King v Marwest, LLC, 192 AD3d 874, 876; McIntosh v Ronit Realty, LLC, 181 AD3d 579, 580; Yong Soon Oh v Hua Jin, 124 AD3d at 641; Cohen v Ho, 38 AD3d 705, 706), prior notice to the opposing party of the subject matter of the amendment (see JBGR, LLC v Chicago Tit. Ins. Co., _____ AD3d _____, 2021 NY Slip Op 03448 [2d Dept]; American Scientific Light. Corp. v Hamilton Plaza Assoc., 144 AD3d 614, 615; New Is. Invs. v Insurance Co. of N. Am., 61 AD2d 1026), and any other relevant factor. For evaluating merit or the lack thereof, CPLR 3025(b) has required, since January 1, 2012 (see L 2011, ch 473, § 3), that the proposed amended pleading accompany the moving papers and clearly show the changes or additions to be made to the incumbent pleading (see CPLR 3025[b]; see also G4 Noteholder, LLC v LDC Props., LLC, 153 AD3d 1326, 1327; Scialdone v Stepping Stones Assoc., L.P., 148 AD3d 950, 952). From that attachment, courts examine the proposed amended pleading and assess, within the context of the action, the viability of factual and legal issues implicated by its proposed new or supplemental content. The circumstances in each instance are sui generis (see Murray v City of New York, 43 NY2d at 404-405; O'Neal v Cohen, 186 AD2d 639, 640).
Here, it cannot be said that the proposed amended pleading, to include the affirmative defense of collateral estoppel, was palpably insufficient or patently devoid of merit. The ALJ determined, after a fact-finding hearing that included the testimony and cross-examination of witnesses, representation by counsel, and vigorous argument, that the incident described by the plaintiff did not occur or did not occur in a manner that caused any injury. The determination of the ALJ, which was affirmed by the Workers' Compensation Board, raised, at a minimum, a colorable defense to the plaintiff's personal injury action.
A further focus of the defendants' CPLR 3025(b) motion is whether the proposed amendment caused surprise or undue prejudice to the plaintiff and, by extension, whether the Supreme Court improvidently exercised its discretion in allowing the late affirmative defense on that prejudicial basis.
"[W]here the application for leave to amend is made long after the action has been certified for trial, 'judicial discretion in allowing such amendments should be discrete, circumspect, [*5]prudent, and cautious'" (Morris v Queens Long Is. Med. Group, P.C., 49 AD3d 827, 828, quoting Clarkin v Staten Is. Univ. Hosp., 242 AD2d 552, 552; see Alrose Oceanside, LLC v Mueller, 81 AD3d 574, 575; Countrywide Funding Corp. v Reynolds, 41 AD3d 524, 525). By the same token, "[m]ere lateness is not a barrier to the amendment [as it] must be lateness coupled with significant prejudice to the other side, the very elements of the laches doctrine" (Edenwald Contr. Co. v City of New York, 60 NY2d at 959 [internal quotation marks omitted]; see Sudit v Labin, 148 AD3d 1073, 1076; Coleman v Worster, 140 AD3d at 1003; HSBC Bank v Picarelli, 110 AD3d 1031, 1032). The closer an amendment is sought in relation to the parties' trial, the more a motion for leave to amend may be properly denied, and particularly when it is sought at the proverbial eve of trial (e.g. Dimoulas v Roca, 120 AD3d 1293, 1296; Moeller v Astor Chocolate Corp., 214 AD2d 548; Mawardi v New York Prop. Ins. Underwriting Assn., 183 AD2d 758).
In this matter, the plaintiff personally testified at his workers' compensation hearing. He was represented at the hearing by counsel. The determination of the ALJ that the claimed accident did not occur as to cause any injury was appealed, and then affirmed, by the Workers' Compensation Board. Those administrative proceedings, which culminated with the affirmance by the Workers' Compensation Board, were completed by September 28, 2015, a full year and a half before the plaintiff's filing of the note of issue and certificate of readiness in this action. The plaintiff knew that his workers' compensation claim had been denied while the negligence action was pending and well before the completion of discovery. Thus, the potential collateral estoppel impact of the workers' compensation proceedings could be of no surprise to the plaintiff prosecuting the personal injury action premised, as it was, upon the same underlying accident and facts. Therefore, any mere lateness of the defendants' motion for leave to amend their answer is not coupled with any discernible prejudice to the plaintiff.
The plaintiff maintains in his reply brief that the ALJ's decision and findings, affirmed by the Workers' Compensation Board, led him to believe that his personal injury action would continue, thus, in effect, serving as a disincentive to challenging the determination of the Workers' Compensation Board in a court of law. We find this argument to be unpersuasive. Whether any such challenge would have been successful, reliant, as it was, upon the ALJ's assessment of witnesses' credibilities, is speculative. In any event, the plaintiff was incentivized to fully litigate the workers' compensation hearing at all of its stages, including a judicial challenge of its result, as it was important for him to establish that the accident and its attendant circumstances had occurred since a related personal injury litigation was foreseen and actually prosecuted during the same general time period.
All things considered, the Supreme Court did not improvidently exercise its discretion in granting that branch of the defendants' motion which was for leave to amend their answer to the second amended complaint. While, perhaps, the defendants should have earlier moved for leave to amend, the application was not presented as the parties were nearing a date for trial. Furthermore, the plaintiff failed to meet his burden of establishing that the proposed amendment caused him prejudice or surprise, or that it was palpably insufficient or patently devoid of merit.
IV. The Supreme Court's Award of Summary Judgment to the Defendants was Proper
The purpose of this opinion is to define how to part the Red Sea in litigation, between circumstances where certain actions are collaterally estopped by prior administrative determinations and other circumstances where they are not estopped.
Reported decisions where a personal injury action was not collaterally estopped by a prior workers' compensation determination include Auqui v Seven Thirty One Ltd. Partnership (22 NY3d 246). In Auqui, the Workers' Compensation Board had found that the plaintiff had no further causally related disability or need for further treatment. The Court of Appeals noted that the Workers' Compensation Law was the state's most general and comprehensive social program, enacted to provide persons injured in the scope of their employment with scheduled wage and medical expense compensation, on an expedited basis, regardless of fault (see id. at 255-256, citing Matter of Balcerak v County of Nassau, 94 NY2d 253, 259). The Court of Appeals comparatively described a negligence action as "much broader in scope" (Auqui v Seven Thirty One Ltd. Partnership, 22 NY3d at 256), and "intended to make an injured party whole for the enduring consequences of his or her injury—including . . . lost income and future medical expenses" (id.). Thus, the Court of Appeals, while recognizing some overlap between the subject matter of the two proceedings based on the scope and focus of each, held that issues are not identical if the negligence action seeks damages by category or chronology for losses not addressed by the more tightly-defined [*6]Workers' Compensation Board. In Auqui, an identity of issues in the two proceedings was found to be lacking, as the plaintiff in the negligence action sought to recover damages for a later-diagnosed cognitive injury that was not within the scope of the earlier workers' compensation proceeding. A consistent result, upon similar reasoning, was reached by this Court in Melendez v McCrowell (139 AD3d 1018), where the injuries and damages at issue in the plaintiff's negligence action exceeded those that had been addressed by the Workers' Compensation Board. Likewise, in Kowalsky v County of Suffolk (139 AD3d 903), the plaintiff was not collaterally estopped from presenting evidence of a surgery to the lumbar region of his spine where the Workers' Compensation Board had previously not authorized the surgery, since the determination of the Board was procedurally-based and did not address the medical necessity of the medical procedure on the merits.
The divergence of issues between a workers' compensation hearing and a related negligence action is not limited to the nature or chronology of damages, but may arise in the context of liability issues as well. For instance, in Vitello v Amboy Bus Co. (83 AD3d 932), the decision of the Workers' Compensation Board, which noted the identity of the plaintiff's employer, did not collaterally estop the parties in the later negligence action from litigating the identity of the plaintiff's true employer, as there was no evidence that the employer's identity had been a disputed issue adjudicated on the merits by the Board. In Rigopolous v American Museum of Natural History (297 AD2d 728), the Workers' Compensation Board determined that the plaintiff's accident occurred while he was standing on the ground, which collaterally estopped him from later asserting a cause of action for elevation-related liability under Labor Law § 240. However, the ALJ in that matter did not rule out other potential causes for the plaintiff's accident, and as a result, there was no collateral estoppel bar to the plaintiff's causes of action for liability under Labor Law §§ 200 and 241(6) (see Rigopolous v American Museum of Natural History, 297 AD2d at 729). Similarly, in Matter of Singh v New York State Div. of Human Rights (186 AD3d 1694, 1695), the plaintiff was not collaterally estopped from filing a discrimination claim with the New York State Division of Human Rights over race-based issues beyond the more narrow related holdover issues previously determined by the Housing Court.
In contrast to the foregoing actions and proceedings where the determinations of various administrative agencies were not collateral estoppel bars to recovery in subsequent litigation, there are several reported decisions where collateral estoppel effect was applied to administrative determinations. In Roserie v Alexander's Kings Plaza, LLC (171 AD3d 822), the plaintiff sought damages for personal injuries allegedly sustained in the scope of her employment from a malfunctioning elevator. The plaintiff's negligence action was barred by collateral estoppel where the Workers' Compensation Board had earlier determined that the plaintiff's claimed injuries, which were identical in both proceedings, were not causally related to the elevator accident. The same reasoning was applied in Emanuel v MMI Mech., Inc. (131 AD3d 1002). There, the issue decided in a Workers' Compensation Board proceeding, that the plaintiff did not sustain a work-related injury on the date in question, was identical to that presented in the negligence action to recover damages for personal injuries. In Langdon v WEN Mgt. Co. (147 AD2d 450), the Workers' Compensation Board specifically addressed the contested issue of the identity of the decedent's employers at the time of his accident. As that issue was the same as in the later negligence and wrongful death action, the plaintiff was collaterally estopped from asserting those claims against the same employers.
Beyond workers' compensation hearings, collateral estoppel arising from administrative determinations has been a successful defense to actions in other analogous contexts (see e.g. Matter of Smolarczyk v Towns, 166 AD3d 786 [the prior owner of a building and his assignee were barred by collateral estoppel from relitigating an issue that had been decided in an earlier CPLR article 78 proceeding, which upheld a determination of the Division of Housing and Community Renewal denying an application for deregulation based upon an alleged substantial rehabilitation of the building]; Chiara v Town of New Castle, 61 AD3d 915 [the plaintiff was barred by collateral estoppel from relitigating in a subsequent action, inter alia, to recover damages for discrimination, issues of misconduct and retaliation which had been litigated and sustained in a prior disciplinary proceeding]; Town of Wallkill v Lachmann, 27 AD3d 724 [the determination of the Town's Zoning Board of Appeals that the defendants' business did not constitute a preexisting nonconforming use under the Zoning Code barred the defendants from relitigating that issue in a subsequent action]).
In reconciling the various cases where collateral estoppel has or has not been applied [*7]as a result of workers' compensation findings, the central inquiry, regarding the identity of issue, is whether the board evaluated an issue on its merits which, by its nature and scope, then prevents the plaintiff from establishing one or more elements for a viable personal injury action, whether as to liability or damages.
The parties moving for summary judgment—here, the defendants—bore the initial burden of demonstrating their prima facie entitlement to judgment as a matter of law on the basis of their collateral estoppel defense (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Zuckerman v City of New York, 49 NY2d 557, 559; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067). Only if the defendants met that standard would the burden then shift to the plaintiff opposing summary judgment to tender evidence sufficient to raise a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324; Zuckerman v City of New York, 49 NY2d at 562; Friends of Animals v Associated Fur Mfrs., 46 NY2d at 1068).
Here, the defendants met their burden of establishing, prima facie, their entitlement to judgment as a matter of law on the ground that the plaintiff's action was barred by the doctrine of collateral estoppel. The ALJ's findings, as affirmed by the Workers' Compensation Board, established as a matter of fact that the accident claimed by the plaintiff did not occur, or did not occur in the described manner as would cause injury. That finding is material and, in fact, pivotal, to the core viability of any personal injury action that the plaintiff could pursue in a court at law regarding the same incident (see Ryan v New York Tel. Co., 62 NY2d at 501). Without an injury-producing occurrence, no court need reach whether the hoist elevator at the construction site had malfunctioned in any way, or whether any such malfunction qualifies as a violation of any provision of the Labor Law, or the nature and extent of the plaintiff's claimed injuries. The non-occurrence of an injury-producing accident is a dagger in the heart of the plaintiff's entire personal injury action in the Supreme Court. The circumstances present here are akin to those seen in Roserie v Alexander's Kings Plaza, LLC (171 AD3d at 822) and Emanuel v MMI Mech., Inc. (131 AD3d at 1002), where in both instances, the issue determined at the plaintiffs' workers' compensation hearings that the plaintiffs had not sustained a work-related injury was identical to the central liability issue in the same plaintiffs' personal injury actions.
In opposition to the defendants' prima facie showing, the plaintiff failed to raise a triable question of fact.
On the separate issue of whether the Workers' Compensation Board provided the plaintiff with a full and fair opportunity to be heard, we conclude that it had. The plaintiff personally appeared at his administrative hearing and testified on his own behalf. He was represented by counsel who elicited his testimony, protected him during cross-examination, cross-examined witnesses presented by adversary counsel, and engaged in summation argument. The hearing itself was detailed and thorough. The due process that is expected for full and fair hearings involves a consideration of various factors. These factors include the nature of the forum and the importance of the claim in the prior proceeding, the incentive and initiative to litigate, the actual extent of the prior proceeding, the competence and expertise of counsel, the availability of new evidence, differences in the applicable law from that of New York, and the foreseeability of future litigation (see Clemens v Apple, 65 NY2d 746, 748; Ryan v New York Tel. Co., 62 NY2d at 501; Gilberg v Barbieri, 53 NY2d at 292). The plaintiff's workers' compensation hearing was professionally conducted in an adversarial setting, and his counsel was a capable advocate. On this record, there is no reason to conclude that the plaintiff's workers' compensation hearing was conducted in a manner that was anything less than full and fair, without restriction upon his entitlement to present and challenge evidence, and to be heard as to result. That the result is not what the plaintiff might have hoped for does not undermine the validity of the administrative proceeding.
As the plaintiff is barred by the doctrine of collateral estoppel from arguing the core of his case in this matter, the Supreme Court properly granted the defendants' motion pursuant to CPLR 3025(b) for leave to amend their answer, and thereupon, for summary judgment dismissing the second amended complaint.
In light of the foregoing, the plaintiff's remaining contentions have been rendered academic.
Accordingly, the order is affirmed.
AUSTIN, DUFFY and BARROS, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court



Footnotes

Footnote 1: The scaffolding contractor was incorrectly identified in the workers' compensation hearing transcript as "Safety Atlantic."