Brennan v MacDonald (2025 NY Slip Op 03994)

Brennan v MacDonald

2025 NY Slip Op 03994

Decided on July 2, 2025

Appellate Division, Second Department

Dillon, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 2, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
DEBORAH A. DOWLING
LOURDES M. VENTURA
JAMES P. MCCORMACK, JJ.

2023-06606
 (Index No. 601143/21)

[*1]Michael W. Brennan, appellant, 
v
Glenn J. MacDonald, etc., respondent.

APPEAL by the plaintiff, in an action to recover damages for medical malpractice, from an order of the Supreme Court (Randy Sue Marber, J.), dated May 19, 2023, and entered in Nassau County. The order granted those branches of the defendant's motion which were for leave to amend his answer to assert certain affirmative defenses and, upon amendment, pursuant to CPLR 3211(a) to dismiss the complaint.

The Law Offices of Edmond C. Chakmakian, P.C., Hauppauge, NY, for appellant.
Gallagher, Walker, Bianco & Plastaras, LLP, Mineola, NY (Michael R. Walker of counsel), for respondent.

DILLON, J.P.

OPINION & ORDER
The plaintiff worked in a law enforcement capacity in the vicinity of the World Trade Center site in the days following the terrorist attacks of September 11, 2001. Years later, he was diagnosed with prostate cancer. The plaintiff commenced this action against the defendant, his former primary care physician, to recover damages for medical malpractice alleging, inter alia, that the defendant delayed in diagnosing the plaintiff's prostate cancer. Additionally, the plaintiff filed a claim through the September 11th Victim Compensation Fund (hereinafter VCF), established by the federal government as Title IV of the Air Transportation Safety and System Stabilization Act of 2001 (49 USC § 40101, as added by Pub. L. 107—42, 115 U.S. Stat. 230) (hereinafter the Air Stabilization Act), to receive compensation for his prostate cancer. Less than a month before jury selection was scheduled to begin in this action, the defendant moved, among other things, for leave to amend his answer to assert certain affirmative defenses and, upon amendment, pursuant to CPLR 3211(a) to dismiss the complaint on the ground that it was barred by the Air Stabilization Act as a result of the plaintiff having filed a claim through the VCF. In an order dated May 19, 2023, the Supreme Court granted those branches of the defendant's motion. The main question we answer on the plaintiff's appeal is whether the plaintiff waived the right to maintain this civil action by submitting a claim under the VCF. We hold that he did.
I. Background
The plaintiff was a Bay Constable working for the Town of Hempstead, Department of Conservation Waterways. Beginning on September 12, 2001, the plaintiff was sent by his employer to work at the World Trade Center site as a law enforcement officer. The plaintiff worked at the site for two weeks, providing security and transporting workers. Years later, the plaintiff was treated by the defendant, who was the plaintiff's primary care physician.
In 2021, the plaintiff commenced this action against the defendant to recover damages [*2]for medical malpractice. The plaintiff alleged, among other things, that the defendant delayed in diagnosing and treating the plaintiff's prostate cancer. That same year, the plaintiff filed a claim through the VCF to receive compensation for his prostate cancer.
At his deposition on July 27, 2021, the plaintiff testified, inter alia, that because of his exposure at the World Trade Center site, he was qualified to be enrolled in the World Trade Center Health Clinic and went there for annual exams. The plaintiff further testified that his prostate cancer had been certified as a World Trade Center condition and that he had signed up for "the compensation program" using a law firm. The law firm said the that the plaintiff could expect to receive a certain amount of money and the law firm would receive a percentage of that amount in fee.
After the note of issue was filed and jury selection was scheduled for January 9, 2023, the defendant moved, by order to show cause dated December 19, 2022, among other things, for leave to amend his answer to assert certain affirmative defenses and, upon amendment, pursuant to CPLR 3211(a), to dismiss the complaint on the ground that it was barred by the Air Stabilization Act as a result of the plaintiff having filed a claim through the VCF. The defendant contended that the plaintiff thus waived the right to bring a civil action (hereinafter the waiver defense). The plaintiff opposed the motion. In an order dated May 19, 2023, the Supreme Court granted the those branches of the defendant's motion and directed dismissal of the complaint. The plaintiff appeals.
II. Leave to Amend
The plaintiff contends that the branch of the defendant's motion which was for leave to amend his answer should have been denied. The plaintiff urges that the motion was made on the eve of trial and during intensive settlement discussions, that the defendant lacked a reasonable excuse for his delay in making the motion, and that the defendant was aware of the plaintiff's claim with the VCF as early as July 2021, when the plaintiff gave testimony about that claim at his deposition, yet the defendant did not make this motion until approximately 16 months later. The plaintiff contends that he was prejudiced by the defendant's delay, as the plaintiff could have withdrawn his VCF claim and proceeded with this action had the defendant advanced the waiver defense upon learning of the plaintiff's VCF claim.
"Motions pursuant to CPLR 3025(b) for leave to amend a pleading are addressed to the sound discretion of the court" (Greater Bright Light Home Care Servs., Inc. v Jeffries-El, 199 AD3d 777, 779). "Leave to amend a pleading should be granted where the amendment is neither palpably insufficient nor patently devoid of merit, and any claimed delay in seeking the amendment does not prejudice or surprise the opposing party" (American Bldrs. & Contrs. Supply Co., Inc. v US Allegro, Inc., 177 AD3d 836, 838). However, "when . . . leave is sought on the eve of trial, judicial discretion should be exercised sparingly" (Morris v Queens Long Is. Med. Group, P.C., 49 AD3d 827, 828). "In exercising its discretion, the court should consider how long the amending party was aware of the facts upon which the motion was predicated, whether a reasonable excuse for the delay was offered, and whether prejudice resulted therefrom" (Haller v Lopane, 305 AD2d 370, 371).
Here, the motion was made almost on the eve of trial, having been made in December 2022, with jury selection scheduled to begin the following month, in January 2023. While the defendant claims, in effect, that the plaintiff did not provide certain discovery relating to the VCF claim, this does not necessarily explain why the defendant was unaware of the possible waiver defense until the time of the motion, particularly where the plaintiff gave testimony at his July 2021 deposition to the effect that he had filed a VCF claim.
Nonetheless, as further explained below, by filing a claim to recover from the VCF, the plaintiff waived his right to bring this civil action. That the defendant may have been slow in making this motion does not permit the plaintiff to obtain a double recovery in contravention of the waiver provision of the Air Stabilization Act. We find unavailing the plaintiff's contention that he was prejudiced by the defendant's delay, because the plaintiff could have chosen to withdraw his VCF claim had the waiver defense been raised earlier. As discussed below, a party waives the right to file a civil action upon the submission of a VCF claim, not upon a recovery under that claim. Also, it is noted that the plaintiff was represented by counsel both in relation to his VCF claim and in this action.
Further discovery is not implicated by the defendant's proposed amended answer raising the waiver defense, which is a defense at law. All things considered, and in the absence of a showing of prejudice, the Supreme Court providently exercised its discretion in granting that branch of the defendant's motion which was for leave to amend his answer to add affirmative [*3]defenses based upon the plaintiff's submission of a VCF claim (see Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959; Dimoulas v Roca, 120 AD3d 1293, 1296; see also Lennon v 56th & Park [NY] Owner, LLC, 199 AD3d 64, 74).
III. VCF Claim as Bar to Civil Action
The plaintiff contends that while his VCF claim is predicated on a link between his prostate cancer and his work following the September 11, 2001 terrorist attacks, his claims against the defendant are not in any manner related to the events of September 11, 2001. The plaintiff argues that his claims against the defendant are based on the defendant's failure to timely diagnose the plaintiff's prostate cancer, whatever its origin, resulting in the plaintiff requiring exceedingly more aggressive and consequential treatment. According to the plaintiff, even if there is a connection between the claims in this action and the payment he received from the VCF, the result should not be dismissal of this action; instead, his recovery here should be reduced by the amount of the VCF payment as a CPLR 4545 offset.
"In considering a motion pursuant to CPLR 3211(a)(7) to dismiss a complaint for failure to state a cause of action, the court must afford the pleading a liberal construction, accept the facts as alleged in the pleading as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Langley v Melville Fire Dist., 213 AD3d 748, 750; see Leon v Martinez, 84 NY2d 83, 87). "Further, where a court considers evidentiary material in determining a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), but does not convert the motion into one for summary judgment, the criterion becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless the movant shows that a material fact as claimed by the plaintiff is not a fact at all and no significant dispute exists regarding the alleged fact, the complaint shall not be dismissed" (May Dock Lane, LLC v Harras Bloom & Archer, LLP, 222 AD3d 635, 636-637 [alterations and internal quotation marks omitted]).
In Virgilio v City of New York (407 F3d 105), the United States Court of Appeals for the Second Circuit (hereinafter the Second Circuit) discussed the Air Stabilization Act and its waiver provision where the plaintiffs sought to maintain an action despite having filed claims with the VCF. The plaintiffs in Virgilio were the personal representatives of firefighters who died responding to the World Trade Center following the attacks on September 11, 2001. The complaint focused on the failure of radio-transmission equipment in the towers that prevented firefighters from receiving evacuation orders. The United States District Court for the Southern District of New York (hereinafter the District Court) directed dismissal of the complaint, noting that the Air Stabilization Act's waiver provision barred the claims. On appeal, the Second Circuit affirmed and found the plaintiffs' claims barred by their election of remedies.
The Second Circuit explained that the Air Stabilization Act
"limited liability for the air carriers involved in the tragedy to their insurance coverage, see Air Stabilization Act § 408(a); created the [VCF][FN1] . . . to provide no-fault compensation to victims who were injured in the attacks and to personal representatives of victims killed in the attacks, see id. §§ 402(3), 405(a)(1), (b), (c); and provided an election of remedies —all claimants who filed with the [VCF] waived the right to sue for injuries resulting from the attacks except for collateral benefits" (Virgilio v City of New York, 407 F3d at 109).
The Air Stabilization Act was amended by the Aviation and Transportation Security Act (see id.). These amendments extended liability limits to certain parties, while allowing VCF claimants to sue individuals responsible for the attacks despite the waiver (see id.). The waiver provision now provides:
"Upon the submission of a claim under this title, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001, or for damages arising from or related to debris removal. The preceding sentence does not apply to a civil action to recover collateral source obligations, or to a civil action against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act" (Air Stabilization Act § 405[c][3][C][I]).
Applying the waiver provision, the Second Circuit agreed with the District Court that "under the plain language of the statute, claimants who have filed claims with the [VCF] have waived 'the right to file a civil action . . . for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001' and that the waiver bars claims for 'damages sustained' against non-airline defendants" (Virgilio v City of New York, 407 F3d at 112). The Second Circuit concluded that the waiver provision was unambiguous and that the plaintiffs' claims were within the scope of the waiver provision. The Second Circuit specifically rejected the plaintiffs' contention that the waiver should not reach the defendants' alleged tortious conduct, as the defendants' acts independently caused the plaintiffs' injuries. "[I]n fact, the injuries to plaintiffs and their loved ones resulted from a series of interrelated events that began with the terrorist attack. Even assuming independent, successive tortious acts by both the terrorists and defendants, as we must on this motion to dismiss, we are hard pressed to find plaintiffs' damages did not result — at least in part — from the terrorist attacks" (id. at 114).
Federal courts have applied the waiver provision subsequent to Virgilio (see Gullas v September 11th Victim Compensation Fund, 2025 WL 1114645, *2, 2025 US Dist LEXIS 71814, *4 [SD NY, No. 24-CV-6679 (LTS)] ["Plaintiff expressly states that she filed a claim with the VCF, and the VCF denied her claim. She therefore waived her right to bring a federal claim for the damages she allegedly sustained as a result of the September 11, 2001 terrorist attacks. The Court dismisses that claim for failure to state a claim on which relief may be granted"]; Watson v Sharpton, 2024 WL 870243, *2, 2024 US Dist LEXIS 35491, *6 [SD NY, No. 23-CV-9716 (LTS)] ["With respect to his claims arising from injuries sustained in the September 11, 2001 terrorist attacks, Plaintiff does not allege any facts showing that he has not filed a claim with the VCF. In fact, he states that he has exhausted all administrative remedies with the VCF, and he attaches documents showing that he did file a claim with the VCF. The Court therefore dismisses Plaintiff's claims arising from harm he experienced as a result of the September 11, 2001 attacks for failure to state a claim on which relief may be granted" (citations and internal quotation marks omitted)]; see also Ewers v Empire State Recovery Fund, 2019 WL 13498511, *1, 2019 US Dist LEXIS 134681, *1-2 [SD NY, No. 19-CV-4599] ["Moreover, if Plaintiff filed an administrative claim, he has waived his right to file most types of lawsuits for his 9/11-related injuries, even if the VCF denied his claim"]). The VCF's implementing provisions note the waiver provision (see 28 CFR 104.61[a]), stating, in part, "[s]ection 405(c)(3)(C) of the Act provides that upon the submission of a claim under the Fund, the claimant waives the right to file a civil action (or be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001, or for damages arising from or related to debris removal, except that this limitation does not apply to recover collateral source obligations, or to a civil action against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act."
Turning to the case at bar, the Supreme Court, upon granting that branch of the defendant's motion which was for leave to amend his answer to assert affirmative defenses based upon the plaintiff's submission of a VCF claim, properly granted that branch of the defendant's motion which was pursuant to CPLR 3211(a) to dismiss the complaint. The complaint fails as a matter of law since, by submitting a claim under the VCF, the plaintiff waived the right to maintain this civil action for damages sustained as a result of the terrorist attacks on September 11, 2001 (see Virgilio v City of New York, 407 F3d 105). While the plaintiff seeks, in this action, to recover damages for injuries he allegedly sustained due to the defendant's malpractice in failing to timely diagnose the plaintiff's prostate cancer, the plaintiff's prostate cancer resulted, as evidenced by his filing of a VCF claim, from his work in and around the World Trade Center site in the aftermath of the attacks on September 11, 2001.
Material submitted by the defendant in support of his motion supports this conclusion. The defendant submitted the VCF personal injury claim document checklist, which provides, in part, [*4]that "[i]f the victim, a representative of the victim, a dependent, spouse, or beneficiary participated in any lawsuit related to September 11th or an eligible condition, you must provide documents showing the lawsuit was withdrawn, settled, or dismissed."
Likewise, a printout from the VCF website addresses the question of whether, where a person thinks that a product manufacturer or doctor contributed to, caused, or exacerbated that person's 9/11-related condition, the person may sue the manufacturer or doctor and still participate in the VCF. The VCF website answers that question in the negative, stating, in part, "[a] lawsuit against a product manufacturer for product liability, or against a doctor for medical malpractice, is based on the legal theory that it was the product or the doctor that caused, contributed to, or exacerbated the 9/11-related condition. These types of lawsuits fall within the terms of the lawsuit waiver set out in the statute under which the VCF operates." The website continues, in part, "[t]his means that in order to be eligible for compensation, when you file your VCF claim, you must waive your right to participate in these types of lawsuits and must meet the settlement and dismissal deadlines set forth in Section 1.3 of the VCF's Policies and Procedures."
Although the plaintiff notes that the foregoing portion of the VCF website includes an "Effective Date" of July 30, 2021, there is no indication on the website that the "lawsuit waiver set out in the statute under which the VCF operates" took effect only on that date or only after the plaintiff filed his VCF claim in 2021. In fact, to the contrary, Virgilio, decided in 2005, shows that the waiver was already in place long before the plaintiff filed his VCF claim or this lawsuit.
In Branca v Brezel (81 Misc 3d 853 [Sup Ct, Queens County]), the Supreme Court relied on the waiver provision of the Air Stabilization Act in granting a motion to dismiss a complaint alleging medical malpractice. In Branca, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction. They contended, among other things, that the plaintiff filed for benefits under VCF prior to commencing the action and thus was estopped from proceeding in the Supreme Court. The court held that the defendants established that under the Air Stabilization Act, once the plaintiff filed a claim with VCF, he waived his right to file a civil action for damages relating to the attack on September 11, 2001. "As plaintiff's claim with VCF was specifically for malignant melanoma on the area around his face, and plaintiff sought medical care and treatment from defendants for this condition, when plaintiff elected to seek compensation through VCF, he waived his right to proceed by civil litigation" (Branca v Brezel, 81 Misc 3d at 855).
The Branca court rejected the plaintiff's contention that the defendants waived their defense, as the defendants were not alleging estoppel or waiver. Rather, the defendants argued that the court lacked subject matter jurisdiction under VCF and that lack of subject matter jurisdiction was a nonwaivable defense. The court also found unpersuasive the plaintiff's contention that the VCF legislation did not anticipate an election of remedies between injuries deriving from the September 11, 2001 terrorist attack and injuries deriving from medical care sought due to the attack. The court concluded that the "plain language of the statute clearly imposed a requirement that claimants choose between the risk-free compensation available under VCF and the potential risks and rewards of civil litigation" (id. at 856).
Although this Court is not bound by a trial court determination, and the Branca court specifically granted the defendants' motion to dismiss the complaint based on lack of subject matter jurisdiction, the Branca court's logic supports the conclusion that the instant action is subject to dismissal. In Branca, as here, the plaintiff sought to recover for damages allegedly sustained due to medical malpractice in failing to timely diagnose a condition sustained as a result of the September 11, 2011 terrorist attacks. As the Branca court found, "considering the plain language of the VCF legislation, all claims related to damages sustained because of the terrorist acts on September 11, 2001 are either filed under VCF or pursued through civil litigation, but claimants cannot pursue both avenues for relief" (id.). We reach the same conclusion here.
The complaint therefore fails as a matter of law since, by submitting a claim under the VCF, the plaintiff waived the right to maintain this civil action for damages sustained as a result of the terrorist attacks of September 11, 2001 (see Virgilio v City of New York, 407 F3d 105; see also Branca v Brezel, 81 Misc 3d 853).
Accordingly, the order is affirmed.
DOWLING, VENTURA and MCCORMACK, JJ., concur.
ORDERED that order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1:Although the original VCF created by the Air Stabilization Act ended several years later, it was reopened through the James Zadroga 9/11 Health and Compensation Act, Pub L No 111-347, 124 US Stat 3623, and later permanently authorized through the Never Forget the Heroes: James Zadroga, Ray Pfeifer, and Luis Alvarez Permanent Authorization of the September 11th Victim Compensation Fund Act, Pub L No 116-34, 133 US Stat 1040 (see In re Terrorist Attacks on Sept. 11, 2001, 2023 WL 2529061, *2, 2023 US Dist LEXIS 37247, *1427).